[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 832 
 PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. This case is before the Court challenging the judgment of the Lafayette County Chancery Court awarding Eldridge C. King a divorce on the ground of desertion. Aggrieved, Nettie C. King perfected this appeal, raising the following issues for our consideration:
 I. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE 1974 WARRANTY DEED WAS FRAUDULENT.
 II. WHETHER THE CHANCELLOR ERRED IN FINDING THAT A 1983 AUTOMOBILE WAS VALUED WORTH $12,200 IN 1995.
 III. WHETHER THE CHANCELLOR ERRED IN FINDING THAT E.C.'S THIRTEENTH CHECK WAS WORTH $1,000 WHEN E.C.'S TESTIMONY ESTABLISHED THAT IT WAS $1,600-$1,700.
 IV. WHETHER THE CHANCELLOR ERRED IN FINDING THAT E.C. WAS ILLITERATE WHEN E.C. READ FROM EXHIBITS INTO THE RECORD.
 V. WHETHER THE CHANCELLOR ERRED IN FINDING THAT NETTIE DID NOT CONTRIBUTE TO THE MARITAL HOUSEHOLD, WHERE THE EVIDENCE PROVED THAT SHE MAINTAINED THE HOME AND PUT HER INCOME INTO A JOINT CHECKING ACCOUNT THROUGHOUT THE MARRIAGE.
 VI. WHETHER THE CHANCELLOR ERRED IN FINDING THAT E.C. WAS UNSOPHISTICATED AND UNEDUCATED WITH REGARD TO LEGAL AND REAL PROPERTY ISSUES.
 VII. WHETHER THE CHANCELLOR ERRED IN THE EQUITABLE *Page 833 DISTRIBUTION OF THE MARITAL ASSETS.
After reviewing the record and applicable precedents, we affirm in part and reverse and remand in part as set out below.
 FACTS
¶ 2. The Kings were married on October 22, 1973. At the time of their marriage, each had adult children from previous marriages. In January 1995, Nettie left the home, taking much of the household furnishings with her. She returned home approximately two to three weeks later; however, she did not remain long, and the couple finally separated on February 5, 1995.
¶ 3. On January 23, 1998, E.C. filed a complaint for divorce on the grounds of desertion, habitual cruel and inhuman treatment, and irreconcilable differences. Nettie filed her answer on February 25, 1998 denying that E.C. was entitled to a divorce and requesting a partition in kind or by sale of the couple's jointly owned real property.
¶ 4. Following a trial on the merits, the chancellor entered an order awarding E.C. a divorce on the ground of desertion. The chancellor set aside a warranty deed executed in April of 1974 which purported to convey a one-half interest in E.C.'s real property to Nettie, finding that E.C.'s signature on the deed was a forgery. Nettie was awarded $100 per month in periodic alimony, and each party was allowed to keep the personal property already in his or her possession. Since the Appellant does not appeal from the chancellor's award of divorce to E.C., that question is not before the Court and therefore stands without further ruling.
 ANALYSIS AND DISCUSSION
I. Whether the Chancellor Erred in Finding That the 1974 Deed Was Invalid.
¶ 5. As her first citation of error, Nettie insists that the chancellor's decision setting aside the deed conveying her a one-half interest in E.C.'s property was improper. Nettie introduced into evidence a deed dated April 19, 1974, whereby E.C. purportedly conveyed to her an undivided one-half interest in the three acres of land on which their home was situated. E.C. testified that when he and Nettie visited the office of the attorney who prepared the deed, he stepped out of the office and "[t]hey got the thing fixed up while I was out." E.C. denied ever signing the deed and maintained that his signature was forged.
¶ 6. Whether a deed has been forged is a question of fact. Cottonv. McConnell, 435 So.2d 683, 685 (Miss. 1983). Forgery must be proven by clear and convincing evidence. Greenlee v. Mitchell,607 So.2d 97, 106-07 (Miss. 1992). We must examine the entire record and accept all evidence which supports the chancellor's findings. Id. If supported by substantial evidence, those findings must be affirmed here. Id.
¶ 7. In Greenlee, the Mississippi Supreme Court affirmed the chancellor's finding of forgery based on a combination of the testimony of an expert witness, who believed the signature to be genuine, the grantor's testimony that she did not sign the deed and never signed her name with only one "l", evidence that the alleged forger had previously spelled the grantor's name with only one "l", that all of the grantor's checks and another warranty deed she admitted signing spelled her name with two "l"s, and the fact that no one testified that they saw the grantor sign the deed. Id. The only evidence that the grantor signed the deed was the testimony of the handwriting expert. Id.
¶ 8. In the present case, the chancellor found that E.C.'s version of events surrounding the preparation of the 1974 deed was more credible. Only E.C. testified about the circumstances surrounding preparation of the 1974 deed. He stated that he never signed the deed. No *Page 834 
witnesses to E.C.'s alleged signature were produced. Neither was Nettie questioned about the conveyance. "As is well-established, the chancellor is vested with assessment of witness credibility." Andrews v. Williams, 723 So.2d 1175 (¶ 10) (Miss. Ct. App. 1998). We cannot find cause to substitute our judgment in this regard for that of the chancellor.
¶ 9. Further, the chancellor relied upon the fact that the 1974 deed bears the signature of "Claudine King" rather than "E.C. King." The chancellor also found that E.C.'s signature on other documents consistently appears as "shaky, tilting letters spelling `E.C. King.'" Though we agree that the signatures are different, we note that some change in the signature is inevitable in the twenty-one years that passed between execution of the deed and preparation of the1995 samples of E.C.'s signature that were introduced into evidence. The Mississippi Supreme Court has cautioned fact finders in cases such as this that they should not act as handwriting experts — nor should we on appeal. Culbreathv. Johnson, 427 So.2d 705, 709 (Miss. 1983). "[H]olography is a recognized field of expertise, subject to mastery only by persons who have undergone extensive training and experience[1]. . . . Still, of course, it was appropriate for the chancellor to review the exhibits in question." Id.
¶ 10. Nettie does offer an explanation for her failure to present any evidence to refute E.C.'s forgery claim. She contends that because E.C. did not raise the issue in his pleadings, she was unaware that the validity of the deed was contested. In his complaint, E.C. does assert that he is entitled to the disputed real property because it is non-marital property. Nowhere does he dispute the validity of the deed. Evidence pertaining to issues not contained in the pleadings generally may not be presented at trial, nor may a trial court award relief on a point not pled. Where a party offers proof on an issue not pled, his opponent, upon timely and proper objection, may of right demand that the evidence be excluded. Queen v. Queen, 551 So.2d 197, 200 (Miss. 1989). Where a party offers no timely objection, we treat the issue as having been tried by implied consent. Id.
¶ 11. Nettie did object to testimony regarding the validity of the deed. However, it was on the ground of estoppel by deed, which is discussed below. Nettie argued that because E.C. conveyed his undivided one-half interest in the property to his children in 1995, he implicitly recognized that Nettie owned the other one-half interest. Accordingly, because Nettie offered no objection on the ground of "surprise" when this issue was raised at trial, we hold that this issue was tried with her implied consent.
¶ 12. Regarding Nettie's assertion that estoppel by deed operates to her benefit, the case upon which Nettie relies, Perkins v.Kerby, 308 So.2d 914, 916-17 (Miss. 1975), is inapplicable to these facts. In Perkins, the court recognized that "[a]n estoppel by deed is depicted as a bar precluding a party from denying the truth of his deed." Id. at 916. However, the court went on to hold that where the conveyance is invalid in the first place, estoppel by deed cannot operate to effect a conveyance of real estate. Id.
at 917. "The general rule is that estoppel will not be invoked to effect a conveyance of real estate. Where the deed, contract or writing is insufficient to meet the lawful requirements for conveyances of land, estoppel will not supply the legal deficiencies." Id. Having determined that the chancellor correctly found the 1974 conveyance was a forgery, the 1995 deed, therefore, cannot be said to cure this deficiency. The doctrine of estoppel by deed is inapplicable. *Page 835 
¶ 13. Next, Nettie urges that the chancellor's decision setting aside the 1974 conveyance must be reversed because of a statutory presumption of validity. The relevant Mississippi statute provides:
 [w]henever a deed has been of record twenty (20) years or more in the land records of the county in which the said land is located, the same shall be presumed to have been upon lawful authority; and the acknowledgment shall be good without regard to the form of the certificate of acknowledgment.
Miss. Code Ann. § 89-5-13 (1972). Nettie contends that because twenty years have passed since the deed was recorded, the deed is presumed valid. However, Nettie has misconstrued the effect of this statute, which does not operate to sanction fraud but rather "is a curative statute for deeds with defective acknowledgments, but otherwise has no bearing on a deed's validity." Greenlee, 607 So.2d at 106. Since the 1974 conveyance was fraudulent, this curative statute is not helpful.
 Whether the Chancellor Erred in Finding That E.C. Was Illiterate When E.C. Read from Exhibits into the Record.
 Whether the Chancellor Erred in Finding That E.C. Was Unsophisticated and Uneducated with Regard to Legal and Real Property Issues.
¶ 14. Finally, Nettie challenges the chancellor's finding that E.C. is illiterate and uneducated as to legal and real property matters. The chancellor found that E.C. was "not able to read, only to recognize the pattern of letters making up his mark. . . .", nor was he a "sophisticated man."
¶ 15. We acknowledge that there are incidents in the record where E.C. is asked to read aloud from a deed. E.C.'s recognition of his "mark"and the names of his children appearing on a deed does not render him literate. However, among the phrases which E.C. appears to read are "and other valuable consideration," "receipt and sufficient," "of all — of which is hereby acknowledged, I, E.C. King, do hereby sell, convey and warranty to Claude Mae Cole, Thomas M. Gray, Nina Coffey, and Jimmy D. King," and "undivided one-half interest in following described property situated in Lafayette County." However, the chancellor, who had the opportunity to observe E.C. firsthand, determined that E.C. was illiterate. While it appears that E.C. may have been able to read these words, this is a fact question uniquely for the fact finder. We decline to disturb the chancellor's findings in this regard.
¶ 16. Under the record made in this case, E.C. was entitled to have the conveyance set aside. We find substantial evidence supporting the chancellor's decision to set aside the deed. As we have previously held, the importance of the chancellor's ability to view the witnesses first hand, as he did here, and assess their credibility and truthfulness is given much deference. Andrews v.Williams, 723 So.2d 1175 (¶ 10) (Miss. Ct. App. 1998). Accordingly, we affirm on this point.
 II. Whether the Chancellor Erred in His Distribution of the Marital Estate.
¶ 17. Nettie complains that the chancellor erred in his distribution of the marital estate. Nettie urges that the property division was inequitable because E.C. was awarded the house, the mobile home and its furnishings, the real property, the truck, and the tractor. On the other hand, Nettie received a 1983 automobile, the furniture she removed from the home, and $100 per month periodic alimony, giving her a total monthly income of $614.
¶ 18. The supreme court has outlined the steps involved in the process of applying the equitable distribution factors listed inFerguson. Ferguson, 639 So.2d 921, 929 (Miss. 1994). First, the chancellor is to classify the parties' assets as marital or non-marital based on the court's decision in Hemsley v. Hemsley,639 So.2d 909 (Miss. 1994). Second, the *Page 836 
chancellor is to value and equitably divide the marital property employing the Ferguson factors as guidelines, in light of each party's non-marital property. However, "[p]roperty division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division." Ferguson, 639 So.2d at 929. Third, if the marital assets, after equitable division and in light of the parties' non-marital assets, will adequately provide for both parties, then "no more need be done." Finally, if an equitable division of marital property, considered with each party's non-marital assets, leaves a deficit for one party, then alimony should be considered.Kilpatrick v. Kilpatrick, 732 So.2d 876 (¶ 16) (Miss. 1999).
¶ 19. Under the first step, marital property can be defined as that which was acquired during the course of the marriage. Waring v.Waring, 747 So.2d 252, 255 (Miss. 1999). Also, property brought into the marriage by one partner and used by the family becomes a marital asset, losing its identity as a separate estate. Myrick v.Myrick, 739 So.2d 432 (Miss. Ct. App. 1999). We find the chancellor was correct in determining that "the property on which the parties lived became marital property due to their many years of shared living in the home and the mobile home." We affirm that finding. We remand for hearing on the value of marital property.
¶ 20. What is absent from the chancellor's findings is any valuation of the real property, the home, the truck, or the mobile home. We recognize that the parties did not provide the court with much evidence of the value of the property. Thus, the chancellor had no economic basis for the equitable distribution of the estate.
 Whether The Chancellor Erred in Finding That a 1983 Automobile Was Valued Worth $12,200 in 1995.
¶ 21. One of the few items of property that the chancellor did value was the couple's automobile. Nettie challenges the chancellor's finding that the 1983 Oldsmobile which she was awarded was worth $12,200. In his opinion, the chancellor noted "[i]t appears that the Defendant disposed of marital assets by taking them away from the marriage namely a car worth $12,200. . . ." Nettie ultimately maintained possession of the vehicle, as each party was awarded the items of personal property in his or her possession. As Nettie points out, it "stretches the imagination that a car purchased in 1983 for $13,000 is still worth $12,200 ten years later." We agree.
¶ 22. It appears the basis for the valuation of the vehicle was E.C.'s testimony that the automobile was purchased in 1983 for $13,000 and that Nettie contributed $800 toward the purchase. In her response to interrogatories, Nettie valued the car at $750, a far cry from the chancellor's valuation. This Court may remand a case to the chancellor for re-evaluation when appraisals of value of disputed items are either out of date or untrustworthy. Carrowv. Carrow, 642 So.2d 901, 907-08 (Miss. 1994). We remand for a re-evaluation of the 1983 vehicle.
 Whether the Chancellor Erred in Finding That E.C.'s Thirteenth Check Was Worth $1,000 When E.C.'s Testimony Established That it Was $1,600-$1,700.
¶ 23. Nettie next seizes on the chancellor's finding that E.C.'s thirteenth retirement check each year is $1,000. E.C. testified that he receives approximately $225 per month from his retirement. On cross-examination, he admitted that each year he receives a thirteenth check which is usually between $1,600 and $1,700. In response, Nettie's attorney stated, "All right. Between $1,000 and $2,000?" to which E.C. responded affirmatively. Nettie contends that the chancellor committed manifest error in finding that E.C.'s thirteenth check is usually $1,000 because E.C. himself stated that the check is approximately $1,600 to $1,700. We *Page 837 
reverse this finding of the chancellor and on remand the a new valuation of the thirteenth check should be arrived at based on the evidence at trial.
 Whether the Chancellor Erred in Finding That Nettie Did Not Contribute to the Marital Household, Where the Evidence Proved That She Maintained the Home and Put Her Income into a Joint Checking Account Throughout the Marriage.
¶ 24. Finally, Nettie attacks the chancellor's finding that she made "only negligible economic contributions to the marriage, and few indirect economic contributions." E.C. testified that he paid all of the couple's bills while Nettie bought only the groceries. There was also testimony that much of Nettie's money went to pay her adult sons' bills, though she explained that she wrote checks for her sons' bills to save them the trouble of purchasing money orders. She maintained that she was always reimbursed. Nettie also stated she made deposits into the couple's joint checking account. As for indirect economic contributions, Nettie testified that she performed all of the household chores, including cooking, washing dishes, washing clothes, and making the beds. A chancellor sits as a fact-finder and in resolving factual disputes, is the sole judge of the credibility of witnesses. Murphy v. Murphy,631 So.2d 812, 815 (Miss. 1994). However, it is settled that non-economic, domestic contributions are of equal value to financial contributions when assessing marital assets. Flechas v. Flechas,724 So.2d 948 (¶ 11) (Miss. Ct. App. 1998) (citing Hemsley v.Hemsley, 639 So.2d 909, 915 (Miss. 1994)).
¶ 25. While this was a factual dispute which the chancellor resolved in favor of E.C., it appears the chancellor failed to give proper weight to Nettie's extensive non-economic contributions to the marital union. Accordingly, we reverse and remand on the distribution of the marital property. On remand the chancellor is to make specific findings as to the fair market value of the property, a thorough assessment of Nettie's non-economic contributions, and then review the distribution of property in light of those findings.
¶ 26. THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT GRANTINGTHE DIVORCE AND SETTING ASIDE THE 1974 CONVEYANCE IS AFFIRMED. THEJUDGMENT IN ALL OTHER RESPECTS IS REVERSED AND REMANDED FORFURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OFTHIS APPEAL ARE TAXED ONE -HALF TO THE APPELLANT AND ONE-HALF TOTHE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., LEE, AND MOORE,JJ., CONCUR. BRIDGES, J., CONCURS IN PART, DISSENTS IN PARTJOINED BY THOMAS, J. IRVING, J., CONCURS IN PART, DISSENTS INPART WITH SEPARATE WRITTEN OPINION.
[1] We acknowledge the familiar and well-settled rule that a layperson may express an opinion to handwriting that is known to that person. Western Union Tel. Co. v. Goodman, 166 Miss. 782,146 So. 128 (1933).