894 So.2d 603 (2004)
Anne Callaway Sweat THOMPSON, Appellant
v.
Allen Hale THOMPSON, Appellee.
No. 2003-CA-00223-COA.
Court of Appeals of Mississippi.
September 14, 2004.
Rehearing Denied November 23, 2004.
Certiorari Denied February 24, 2005.
*604 Lee Davis Thames, Jackson, J. Mack Varner, Vicksburg, attorneys for appellant.
Fritzie Louise Toney Ross, Joel J. Henderson, Greenville, attorneys for appellee.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. Anne Callaway Sweat Thompson and Allen Hale Thompson were granted an irreconcilable differences divorce by the Chancery Court of Washington County. The parties agreed that the chancellor would decide the equitable division of marital assets, award of alimony, and award of child support. Anne appeals the chancellor's decision.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Anne and Allen were married on January 29, 1989. They had three children: Bett was born on November 6, 1989, May was born on May 4, 1991, and Grace was born on September 7, 1993.
¶ 3. At the time of their marriage, both Anne and Allen had completed medical school. Allen completed medical school in 1985 and received his medical license in 1986. At the time of their marriage, Allen was employed as a physician with the Mississippi State Hospital.
¶ 4. In approximately March of 1989, Anne and Allen moved to Greenville. Allen began to practice internal medicine with the Greenville Clinic, P.A. Allen eventually acquired an equity interest in the Greenville Clinic. Allen also acquired an equity interest in various businesses and entities that were affiliated with the Greenville Clinic, including the Greenville Clinic Equipment, Inc. and the Greenville Clinic Properties, Inc. In addition, at the time of their divorce, Allen owned an equity interest in Colorado Land Company, LLC; Colorado Land Company II, LLC; Greenville Ambulatory Surgical Center Holding Company LLC; and Mississippi Delta IPA, LLC. Allen's assets also included retirement accounts that he obtained from his earnings at the Greenville Clinic.
¶ 5. Upon Bett's birth, Anne discontinued residency training and assumed the role of a full-time homemaker and stay-at-home mom. As a result of this decision, Anne did not complete her medical training required to practice in a specialized field of medicine.
¶ 6. When Bett turned one, Anne began to work part-time at the Delta Health Center. After taking a short maternity leave after the birth of May and Grace, Anne returned to her part-time employment. At all times, however, Anne retained her role as the primary caregiver for their children. Anne's assets consisted of a small retirement account she acquired during her employment with Delta Health Center.
¶ 7. In June of 2001, Anne filed for divorce. She alleged as grounds for divorce habitual, cruel, and inhuman treatment *605 and, in the alternative, irreconcilable differences. Allen counterclaimed for divorce on the same grounds.
¶ 8. Anne filed a motion for temporary relief and support. The chancellor awarded Anne temporary custody of the children, but did not award her any temporary child support or spousal support. The chancellor ordered both parties to remain in the marital house, with Allen paying all bills. These arrangements failed. Anne and the children moved to Johnson City, Tennessee. Without an appropriate order granting temporary relief, Anne incurred substantial credit card debts to support herself and the children.
¶ 9. On September 20, 2001, the parties withdrew their fault based grounds and agreed to an irreconcilable differences divorce. After hearing the contested issues, the chancellor executed a memorandum opinion and judgment of divorce.
¶ 10. The chancellor awarded Anne custody of the three children and $400 a month per child in child support. The chancellor denied periodic alimony, but awarded Anne $50,000 in lump sum alimony. The chancellor noted that Anne had accumulated $17,000 in credit card debt, while caring for the children since the parties' separation, and ordered Allen to pay this amount. The chancellor allowed Allen to claim one of the children on his income tax returns. The chancellor removed Anne as custodian of education accounts the couple had set up for their children.
¶ 11. Allen and Anne each received a half interest in the marital home. Allen and Anne received their retirements, valued at $178,653 and $11,655, respectively. Allen's retirement assets included his 401k at the Greenville Clinic, valued at $137,371, and an individual retirement account, valued at $41,282. Allen retained full ownership of all his equity interests in the companies previously identified and all of his investments.
¶ 12. Anne appeals and asserts that the chancellor erred in (1) equitably distributing the marital assets, (2) awarding alimony, (3) awarding child support, (4) granting Allen an income tax exemption, and (5) removing Anne and replacing Allen as the custodian of the children's education accounts. Finding error, we reverse and remand for further proceedings consistent with this opinion.

STANDARD OF REVIEW
¶ 13. This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Flechas v. Flechas, 791 So.2d 295, 299(¶ 7) (Miss.Ct.App.2001). We are required to respect the chancellor's findings of fact that are supported by credible evidence and not manifestly wrong. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997). Nonetheless, if manifest error is present or a legal standard is misapplied, this Court will not hesitate to reverse. Tilley v. Tilley, 610 So.2d 348, 351 (Miss.1992).

ANALYSIS

I. The chancellor manifestly erred in her attempt to equitably distribute the marital assets.

II. The chancellor manifestly erred and abused her discretion regarding alimony.
¶ 14. In the dissolution of a marriage, the division of property and the award of alimony are to be considered together. Burnham-Steptoe v. Steptoe, 755 So.2d 1225, 1233(¶ 25) (Miss.Ct.App.1999). The chancellor must follow certain guidelines for: (a) the equitable division of assets, Ferguson v. Ferguson, 639 So.2d *606 921, 928 (Miss.1994); (b) an award of periodic alimony, Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993); and (c) an award of lump sum alimony, Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). Proper application of these guidelines will allow the chancellor to "conclude the parties' legal relationship, leaving each in a self-sufficient state." Ferguson, 639 So.2d at 929.
¶ 15. The chancellor's consideration begins with the equitable division of marital property followed by the consideration of an award of lump sum and/or periodic alimony. King v. King, 760 So.2d 830, 835-36(¶ 18) (Miss.Ct.App.2000). Anne claims that the chancellor failed to equitably divide the couple's assets. Specifically, she asserts that the chancellor failed to consider Allen's investments and retirement accounts as marital property, and this decision resulted in an inequitable distribution of the marital assets.
¶ 16. On the equitable division of assets, the chancellor opined:
The parties have represented to the Court that all furniture and household goods have been divided. It appears from the testimony that the parties own a house and lot located at 111 Bayou Road in Greenville. The Court directs that the house be sold and the equity divided between the parties. The Court observed that [Anne] had approximately $17,000 in credit card bills. The Court directs that [Allen] pay the balance of [Anne's] credit card bills within ninety (90) days from the date of this order. There was a great disparity in income prior to [Anne] obtaining her new job, and [Anne's] credit card balances were greatly increased for a period of time that she did not receive any support from [Allen]. A division need not be equal, but equitable. Love v. Love, 687 So.2d 1229 (Miss.1997). The goal is to leave each party in a self sufficient state. Bullock v. Bullock, 699 So.2d 1205. In equitable distribution, the division of liabilities is also included, Gambrell v. Gambrell, 650 So.2d 517 (Miss.1995).
Identical language was included in the judgment of divorce.
¶ 17. The evidence revealed that Anne and Allen jointly owned their residence and household furnishings. During the marriage, Allen acquired an equity ownership interest in seven entities: (a) Greenville Clinic; (b) Greenville Clinic Equipment, Inc., which owned and leased medical diagnostic equipment to the Greenville Clinic; (c) Greenville Clinic Properties, Inc., which leased medical equipment to the Greenville Clinic; (d) Colorado Land Company, LLC; (e) Colorado Land Company II, LLC; (f) Greenville Ambulatory Surgical Center Holding Company LLC; and (g) Mississippi Delta IPA, LLC. Allen also contributed to two separate retirement accounts through his employment with the Greenville Clinic valued at $178,653. Allen's financial statement, introduced through his certified public accountant, indicated that his net worth was $302,226. Anne owned one asset, her Delta Medical Center retirement account, valued at $11,655.
¶ 18. In Lauro v. Lauro, 847 So.2d 843, 847 (¶¶ 9-10) (Miss.2003), the Mississippi Supreme Court held:
In making an equitable distribution of the marital estate, the property should be classified as a marital or a non-marital asset. Id. See also Hemsley v. Hemsley, 639 So.2d 909, 914-15 (Miss.1994). Assets accumulated during the course of a marriage are subject to equitable division unless they are characterized as separate property. Johnson, 823 So.2d at 1161. "Mississippi courts `assume for divorce purposes that the contributions and efforts of the marital *607 partners, whether economic, domestic, or otherwise are of equal value.'" Id. (quoting Hemsley, 639 So.2d at 915).
The chancellor failed to make specific findings as to how the marital property was classified and divided. Therefore, this case is reversed and remanded for clarification consistent with prior case law.
¶ 19. Here, the chancellor's specific findings were deficient. The chancellor failed to classify the assets and failed to render written findings on the Ferguson factors. Thus, based on Lauro, we reverse and remand this case to "make specific findings as to how the marital property was classified and divided." Id.
¶ 20. A review of the evidence indicates that all of Anne's and Allen's assets were acquired or accumulated during their marriage. Thus, under Hemsley, the chancellor should have first classified their assets as marital property, subject to equitable division, and their contributions should have been considered of equal value. Hemsley, 639 So.2d at 915.
¶ 21. According to the evidence, Anne and Allen married prior to Allen's employment with the Greenville Clinic. Allen offered no proof that any of his assets or investments were separate or non-marital property. Thus, it was clearly erroneous for the chancellor to not consider all of Anne's and Allen's assets in the equitable division of assets. Reviewing the chancellor's findings of fact and conclusions of law, it is clear that the chancellor failed to equitably divide their marital assets. Likewise, the chancellor's failure to consider Anne's contributions to be equal value was clearly erroneous. Accordingly, we reverse and remand this case for the chancellor to equitably divide the parties' assets consistent with the principles announced in Hemsley and Ferguson.
¶ 22. We now turn to the chancellor's decisions on alimony and child support. In Lauro, the supreme court determined that since the case was remanded for further consideration of equitable division, the chancellor should be "instructed to revisit the awards of alimony and child support after [s]he has properly classified and divided the marital assets." Lauro, 847 So.2d at 850 (¶ 17). On remand, the chancellor will have all of the tools of marital dissolution available: equitable division, lump sum alimony,[1] periodic alimony,[2] and child support. The chancellor should not construe our opinion as to favor one over the other. Indeed, the chancellor may correct the error by granting an appropriate equitable division of assets, an appropriate award of lump sum alimony, or an appropriate award of periodic alimony, or any combination thereof. The chancellor's opinion and judgment shall be required to provide specific findings.

III. Whether the chancellor manifestly erred in awarding child support.
*608 ¶ 23. As previously stated, since this case is remanded for further consideration of equitable division, the chancellor should be "instructed to revisit the awards of alimony and child support after [s]he has properly classified and divided the marital assets." Lauro, 847 So.2d at 850 (¶ 17).
¶ 24. Mississippi Code Annotated Section 43-19-101 (Rev.2000) establishes guidelines for the determination of child support. Based on the number of children, the statute provides for a percentage of the non-custodial parent's adjusted gross income to be paid in child support. Miss.Code Ann. § 43-19-101(1) (Rev.2000). However, when the adjusted gross income exceeds $50,000, the court shall make a written finding in the record as to whether or not the application of the guidelines is reasonable. Miss.Code Ann. § 43-19-101(4) (Rev.2000).
¶ 25. Allen's adjusted gross income exceeded $50,000. However, the chancellor's opinion and judgment contained no written findings as to whether the statutory guidelines were reasonable or whether a departure was appropriate. Thus, we have no guidance as to how the chancellor arrived at child support in the amount of $400 per month, per child. The chancellor clearly erred in failing to reveal her findings as to the needs of the children or the amount of salary upon which the child support award was based.
¶ 26. On remand the chancellor should consider the statutory guidelines and make a written determination of whether the guidelines are reasonable given the facts of this case.

IV. Whether the chancellor erred in granting Allen an income tax exemption.
¶ 27. Anne contends that the chancellor erred in allowing Allen, the non-custodial parent, to claim one of the children on his income tax return. The chancellor in her original opinion ordered Allen to claim two of the children on his return and Anne to claim one of the children. In the chancellor's order on rehearing she directed Anne to claim two children and Allen to claim one. The chancellor noted that Anne's income had substantially increased, and that she had custody of all three children. On appeal, Anne asserts that since she was awarded custody of all three children, she should be able to claim all three children on her income tax returns.
¶ 28. In Louk v. Louk, 761 So.2d 878, 884(¶ 17) (Miss.2000), the court noted that the factors to be included in determining whether to award an income tax exemption to a non-custodial parent included (1) the value of the exemption at the marginal tax rate of each parent, (2) the income of each parent, (3) the age of the children, (4) the percentage of the cost of supporting the children borne by each parent, and (5) the financial burden assumed by each parent under the property settlement in the case. The court concluded that since the custodial parent was not gainfully employed and the non-custodial parent was paying well above the statutory guidelines for support, the chancellor's decision to allow the non-custodial parent tax exemptions was not manifestly erroneous. Id. at 883(¶ 15).
¶ 29. Consistent with our earlier holding, the chancellor may consider the appropriate allocation of the tax exemptions on remand.

V. Whether the chancellor erred in removing Anne and replacing Allen as the custodian of the children's education accounts.
¶ 30. Anne argues that the chancellor erred in placing Allen as the sole custodian of the children's education accounts. She cites Allen's testimony that Anne had not inappropriately spent any money from the *609 accounts during the time that she had been custodian. Anne notes that no safeguards were placed on the accounts to ensure the proper use of the money. Because no safeguards were placed on the accounts, Anne asserts that the money can be used in any way, effectively making the accounts part of Allen's own estate.
¶ 31. The chancellor, in placing Allen as custodian of the accounts, found that Allen set up the accounts and provided the funding for the accounts. The chancellor noted Anne's testimony that Allen sometimes withdrew money from the accounts, but ruled that the duty to provide college funding is not absolute.
¶ 32. On remand, the chancellor will again be able to consider this question. Of concern to us, however, is that the chancellor consider the appropriate uses of these funds. If indeed Allen may use the funds for any purpose other than the children's education, the custodial accounts may, or possibly should, be classified as marital property subject to equitable distribution. We do not make such finding but instruct the chancellor to consider the appropriate use of such funds.
¶ 33. In conclusion, by remanding this case for further consideration, the chancellor will have all of the tools of marital dissolution available: equitable division, lump sum alimony and/or periodic alimony. Our opinion does not favor one over the other. Indeed, the chancellor may grant an appropriate equitable division of assets, an appropriate award of lump sum alimony, or an appropriate award of periodic alimony, or an appropriate combination.
¶ 34. In King v. King, 760 So.2d 830, 835-36 (¶ 18) (Miss.Ct.App.2000), we detailed the proper procedure:
First, the chancellor is to classify the parties' assets as marital or non-marital based on the court's decision in Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994). Second, the chancellor is to value and equitably divide the marital property employing the Ferguson factors as guidelines, in light of each party's non-marital property. However, "[p]roperty division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division." Ferguson, 639 So.2d at 929. Third, if the marital assets, after equitable division and in light of the parties' non-marital assets, will adequately provide for both parties, then "no more need be done." Finally, if an equitable division of marital property, considered with each party's non-marital assets, leaves a deficit for one party, then alimony should be considered. Kilpatrick v. Kilpatrick, 732 So.2d 876(¶ 16) (Miss.1999).
On remand, this procedure should be followed.
¶ 35. For the above stated reasons, we reverse and remand this case for further consideration by the chancellor.
¶ 36. THE JUDGMENT OF THE CHANCERY COURT OF WASHINGTON COUNTY IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER AND BARNES, JJ., CONCUR.
NOTES
[1] Although we do not discuss the chancellor's ruling on lump sum alimony in detail, we again note that the chancellor's opinion and judgment failed to address the factors necessary to consider an award of lump sum alimony. See Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). On remand, the chancellor is required to consider each of these factors.
[2] The chancellor's ruling on periodic alimony failed to address the factors necessary to consider periodic alimony. See Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). Although, the amount of periodic alimony is largely left to the sound discretion of the chancellor. The chancellor's opinion indicates that she did not consider each of the appropriate factors in rendering her opinion. We do not have sufficient information to determine how the chancellor considered these factors and arrived at her decision.