904 So.2d 1143 (2004)
Sheila JONES, Appellant/Cross-Appellee
v.
Jay JONES, Appellee/Cross-Appellant.
No. 2003-CA-00516-COA.
Court of Appeals of Mississippi.
October 19, 2004.
*1145 James R. Hayden, Hattiesburg, attorney for appellant.
Glenn Louis White, Petal, Sheila Havard Smallwood, Tupelo, attorneys for appellee.
EN BANC.
CHANDLER, J., for the Court.
¶ 1. On March 6, 2002, the Chancery Court of Perry County, Mississippi, granted a divorce to Sheila Jones and Jay Jones. The property dissolution arrangement granted a one-half interest of the marital home to each party, two-thirds of the value of the bank accounts as of the date of separation to Sheila Jones and one-third of the value to Jay Jones, personal property to remain in the possession of the party with possession at the time of the divorce judgment, and each party to assume the debts in his or her name as contracted. Sheila appealed, raising the following issue:
I. WHETHER THE CHANCELLOR EQUITABLY DISTRIBUTED THE ASSETS OF THE PARTIES
¶ 2. Jay cross-appealed, raising the following issues:
II. WHETHER THE CHANCELLOR PROPERLY CHARACTERIZED MRS. JONES' 25.7 ACRES OF PROPERTY AS SEPARATE PROPERTY
III. WHETHER THE CHANCELLOR PROPERLY CALCULATED THE VALUE OF MR. JONES' 401K ACCOUNT
¶ 3. Finding that the chancellor equitably distributed the parties' marital property, properly characterized Sheila Jones's property she purchased prior to the marriage as separate property, but miscalculated the value of Jay Jones's 401K account, we affirm in part, and reverse and render in part.

FACTS
¶ 4. Sheila Jones and Jay Jones married on July 7, 1990. When the couple married, Sheila had assets which she valued at $23,690, and no debts. Included in Sheila's assets was a 26.7 acre tract of land Sheila purchased from her great-grandmother's estate. The mortgage on this land was paid off at the time of the marriage. Jay brought into the marriage $4,480 in assets and debts in the same amount. Their marriage produced two children. The couple separated on November 13, 1999. On August 28, 2000, the chancery court entered an order requiring that neither party shall encumber any assets of the marriage.
¶ 5. The couple's marital difficulties began in September 1990, when Jay's former girlfriend told him she was pregnant with his child. Jay began a long and protracted legal battle with his ex-girlfriend beginning in 1992, in which at least $10,000 in legal fees were spent. In 1995, it was determined that Jay was the father of his *1146 ex-girlfriend's child, and he was required to pay child support.
¶ 6. In 1991, Sheila and Jay purchased three acres of land adjoining the 26.7 acres Sheila already owned. This land was purchased with money obtained by a $3,500 loan. They also entered an agreement to purchase a home in the amount of $4,000. The home they purchased was situated on the three acres they had bought together, plus an additional acre on Sheila's 26.7 acre property. Sheila and Jay obtained an additional $10,000 loan, secured by Sheila's 26.7 acres of property. They used the money to pay for the house, to pay to have the house moved and set up on a parcel of the land, to provide a roof on the house, and to make other improvements.
¶ 7. Jay and Sheila's second and final loan secured by Sheila's 26.7 acres of property was obtained in 1995, in the amount of $3,000. This money was used to pay Jay's attorney for his representation in Jay's paternity dispute, to pay off a credit card debt, and to pay for car repairs. Both loans, as well as the loan for the additional three acres of property, were paid off at the time of the separation.
¶ 8. On March 6, 2002, the chancellor granted the parties' divorce on the grounds of Jay's adultery. The chancellor found that Sheila had acquired 26.7 acres of property prior to the marriage. Of this property, the chancellor found that 25.7 acres would remain separate property.
¶ 9. The chancellor found the three acre parcel, house, and one additional acre to be marital property. The chancellor set a value of $22,800 for the acreage and home, with each party to have a one-half interest. Sheila currently enjoys exclusive use and possession of the property. When the youngest child reaches the age of twenty-one or when Sheila remarries, Jay shall receive a payment of $11,400 for his interest, and fee simple shall vest to Sheila.
¶ 10. The chancellor found the valuation of the parties' other assets to be difficult to determine. Both parties withdrew funds after the temporary order of separation even though they were forbidden to do so. Accordingly, the court used the valuation of the accounts as of the date of the separation to control. There were four accounts that were subject to division; two accounts were in Jay's name, and two accounts were in Sheila's name. The chancellor found that the value of Sheila's retirement account was $35,636.11, and the value of her savings account was $4,400. Jay had a 401K account in the sum of $4,019.39 and a savings account in the sum of $3,413. The total of Jay and Sheila's assets in bank accounts was $47,468.50. Sheila was to receive two-thirds of this amount, and Jay was to receive one-third of this amount. For Jay to receive this amount, Sheila was to pay $8,390.44 to Jay within sixty days of the judgment. The chancellor also ruled that all debts were to remain in the name of the party that contracted the debt.
¶ 11. As to the other assets, each party was to keep all personal property presently in his or her possession, with the exception that Jay was to recover his automotive tools, his college diploma, the gun cabinet, pots and pans from his grandmother, 32 sheets of tin, his 1999 Chevy Silverado (later repossessed), his 1988 Chevy Silverado, and his 1979 Jeep which Jay converted into a "monster truck" during the marriage. For Sheila, this part of the judgment meant that Sheila would keep her 1994 Cadillac, living room furniture, a 48-inch television, bedroom furniture, and household appliances.
¶ 12. Sheila filed a motion for new trial and/or reconsider on March 19, 2002. Jay was also dissatisfied with the chancellor's judgment and filed a motion to reconsider *1147 and to alter/amend judgment on March 21, 2002. The chancellor denied all relief as it pertained to property division.

ANALYSIS

I. WHETHER THE CHANCELLOR EQUITABLY DISTRIBUTED THE ASSETS OF THE PARTIES
¶ 13. In dividing marital property, Mississippi has adopted a system of equitable distribution. Under the equitable distribution system, "the marriage is viewed as a partnership with both spouses contributing in the manner they have chosen." Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss.1994). The division of marital assets is within the broad inherent equity powers of the chancery court. This duty has been codified in Mississippi Code Annotated § 93-5-23 (Rev.2000). In deciding how to distribute the marital property equitably, the chancellor applied Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994), which lists eight factors that a court should, but is not required, to consider in dividing the marital property.
¶ 14. Our scope of review in domestic relations matters is limited. "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990). In our review of the chancellor's application of the Ferguson factors, we are not required to perform an extensive review of the Ferguson analysis. Instead, we review the judgment broadly to ensure that the chancellor did not abuse his discretion. Wells v. Wells, 800 So.2d 1239, 1243(¶ 8) (Miss.Ct.App.2001).
¶ 15. Ferguson instructs the chancellor to consider contributions to the accumulation of the property. "Some factors to be considered in determining contribution include: economic contributions to the acquisition of the property; contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets." Ferguson, 639 So.2d at 928. Sheila takes the position that the chancellor erred in distributing property because she brought more than $23,600 of assets into the marriage while Jay brought no assets into the marriage[1] and worked full time while the parties were married. She believes that Jay made no contributions to the marriage, financially, emotionally, or otherwise. We find Sheila's position to be without merit. The court considered the conduct of both parties, who endured a strained relationship during the entire marriage, realizing that their strained relationship affected the contributions both parties could make to the marriage. We shall not disturb his findings. We are unpersuaded by Sheila's argument that she should be entitled to a greater share of the marital estate because of her claim that she made all the financial contributions to the marriage. Mississippi has abandoned the title theory of dissolution of property when dividing marital assets. Draper v. Draper, 627 So.2d 302, 305 (Miss.1993). We find no evidence to support Sheila's position that Jay financially contributed nothing to the marital estate. Two of the four accounts the chancellor divided were in Jay's name, and Jay made *1148 substantial payments towards the mortgages on Sheila's real property.
¶ 16. The chancellor shall consider the degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets. Ferguson, 639 So.2d at 928. Sheila expended money from her retirement account in excess of $17,000 in contradiction of the temporary order. Sheila believes she should receive credit for spending this money for marital purposes. We agree with the chancellor that she should not be compensated for these withdrawals. She used the money to pay her divorce attorney, redecorate a house in which her husband was no longer living, and finance a Christmas that was celebrated without her husband. Similarly, the chancellor considered the fact that Jay spent considerable marital funds defending an action that ultimately led him to pay child support for his out-of-wedlock child and took this fact into consideration when dividing the marital property.
¶ 17. The chancellor shall consider the market value and the emotional value of the assets subject to distribution. Ferguson, 639 So.2d at 928. Sheila believes that she should receive credit for the value of the personal property that Jay received because the value of Jay's personal property exceeds the value of the personal property that Sheila received. Sheila also claims that the chancellor was manifestly in error because the chancellor did not place a value on the personal property that was divided. We disagree. Sheila and Jay had to submit financial declarations to the chancellor before the chancellor divided the marital property. The financial declarations listed the approximate value of every car and all other personal property Sheila and Jay owned. Therefore, the chancellor was aware of the value of the parties' personal property. Although Jay's personal property has a higher value than Sheila's, the chancellor took this fact into consideration when he decided to award two-thirds of the marital property accounts to Sheila.
¶ 18. Sheila claims that the division of her retirement account would cause her an unsurmountable tax penalty. However, this should not be an issue because she can avoid these tax penalties through the entry of a qualified domestic relations order. 26 U.S.C. § 414(p).
¶ 19. The chancellor shall consider the needs of the parties for financial security with due regard to the combination of assets, income and earning capacity. Ferguson, 639 So.2d at 928. Sheila claims that the chancellor's division of property is unfair because the division of property would leave her unable to take care of herself and her children. At the hearing to reconsider the chancellor's division of property, Sheila submitted that she expended approximately $12,000 in medical care for her sons before the chancellor divided the marital property. Sheila did not raise this issue when the chancellor divided the property.[2] On appeal she claims that the chancellor's ruling that each party should pay the debts contracted in his or her name was grossly unfair. Sheila claims that most of the marital debt was in her name because she had a better credit rating than Jay. We believe that the chancellor's division of marital property is sufficient to allow Sheila to continue to support herself. Sheila earns a substantial income as a programmer with Forrest General Hospital, earning an income of approximately $5,000 per month, and she lives in a house that is currently free of any mortgages. Jay, on the other hand, *1149 became disabled in April 2001, and is currently not working. At this time, Jay's only sources of income are Social Security payments and private disability, totaling $1,951 per month. Some of this money must go to child support for his other children. At this time, Jay has shown himself to be the needier party. We find that the chancellor's division of marital property was fair and reasonable.

CROSS-APPEAL

II. WHETHER THE CHANCELLOR PROPERLY CHARACTERIZED MRS. JONES' 25.7 ACRES OF PROPERTY AS SEPARATE PROPERTY
¶ 20. The chancellor decided that 25.7 acres of Sheila's 26.7 acre tract of property was not marital property and granted full ownership of the tract to Sheila. Jay maintains that although the property was purchased by Sheila before the marriage, the property converted from separate property to marital property under the transmutation theory. To support this argument, he notes that payments on this tract of property were paid from an account in which Jay had an interest. Second, the 26.7 acres of property adjoined the three acres and home Sheila and Jay purchased together. Third, he placed approximately $5,000 of his 401K towards the note of the 26.7 acres of property. Fourth, he physically contributed to the property by doing fence repair, bush hogging, and other manual tasks. The extent of Jay's physical contributions to the maintenance of the property is disputed. Sheila claims that her father and brother were primarily responsible for the maintenance and upkeep of the land.
¶ 21. In support of the transmutation theory, Jay relies on King v. King, 760 So.2d 830 (Miss.Ct.App.2000). In King, the Mississippi Court of Appeals stated that property "brought into the marriage by one partner and used by the family becomes a marital asset, losing its identity as a separate estate." King, 760 So.2d at 836(¶ 19). Similarly, in Boutwell v. Boutwell, 829 So.2d 1216, 1221(¶ 21) (Miss. 2002), the Mississippi Supreme Court held that a home inherited by the wife but lived in by both parties during the marriage was a marital asset.
¶ 22. We reiterate that a chancellor will not be reversed unless he is manifestly wrong in his findings of fact or manifestly abused his discretion. Gillespie v. Gillespie, 594 So.2d 620, 622 (Miss.1992). In this case, there is evidence that Sheila's property remained separate property. The land has always been titled in Sheila's maiden name and was debt free at the time of the marriage. Therefore, any payments Jay made towards the subsequent mortgages were actually payments of marital debts. Sheila purchased the land from her great-grandmother's estate and had a great emotional attachment to that particular piece of property. Beginning in 1994, Sheila's uncle planted corn on the property, demonstrating that Sheila's family and not Jay used the land for their enjoyment. There is no evidence that Jay used the 25.7 acres of Sheila's property for farming or for any other purpose. There was conflicting evidence as to the extent Jay maintained Sheila's 26.7 acres, and the chancellor weighed this conflicting evidence accordingly. We find that the chancellor's finding that 25.7 of Sheila's 26.7 acres is separate property to be supported by the record.

III. WHETHER THE CHANCELLOR PROPERLY CALCULATED THE VALUE OF MR. JONES' 401K ACCOUNT
¶ 23. The chancellor divided the parties' marital property using the property value *1150 at the time of the separation date, November 13, 1999. Jay submits that the value of his 401K on November 13, 1999, was $703.45 instead of $4,019.39. Jay has produced a copy of his 401K statement as of November 13, 1999, proving that his balance was $703.45 at that time. The chancellor miscalculated the value of the assets. Accordingly, we reverse and render this part of the judgment. As corrected, the total financial assets as of the date of separation is $44,152.56. For Jay to receive one-third of the financial assets, he shall receive $10,601.07, or an additional $2,210.63, from Sheila.
¶ 24. Jay also seeks interest at the legal rate of 8% on the amount of the judgment pursuant to Mississippi Code Annotated § 75-17-7 (Miss.2000). This statute states, "All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint." We deny Jay's motion for post-judgment interest. In Altom v. Wood, 300 So.2d 786 (Miss. 1974), the defendant accepted the Mississippi Supreme Court's affirmance of a the circuit court judgment upon the condition that the defendant pay an additur of $10,000 to the plaintiff. The plaintiff sought post-judgment interest on the additional $10,000, which the court denied. The Mississippi Supreme Court stated, "There is no authority to award interest on judgments based on an unliquidated claim until the judgment is entered." Id. Jay's entitlement to an additional payment from Sheila remains an unliquidated claim until the date of this judgment. As a result, Jay is not entitled to post-judgment interest.
¶ 25. THE JUDGMENT OF THE PERRY COUNTY CHANCERY COURT IS AFFIRMED ON DIRECT APPEAL AND AFFIRMED IN PART, REVERSED AND RENDERED IN PART ON CROSS-APPEAL. COSTS OF THIS APPEAL ARE ASSESSED IN EQUAL PARTS TO THE APPELLANT AND THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS AND BARNES, JJ., CONCUR. ISHEE, J., NOT PARTICIPATING.
NOTES
[1] Sheila's 26.7 acres of property, which the chancellor ruled as separate property and therefore not subject to property division, was valued $18,690 at the time of the marriage.
[2] Sheila has not raised this issue on appeal.