RUSSELL, J.,
concurring in part and in result:
¶29. I agree with the majority that Michael Turner’s lack of notice of the hearing date requires the divorce to be set aside. But the chancery court in this case also granted a fault-based divorce without the required proof, deprived Michael of reasonable visitation with Cameron Turner, failed to make written findings on the relevant equitable-distribution factors, and awarded attorney’s fees to Jane Turner without proof of her inability to pay. Contrary to the dissent, this opinion is not advisory, but simply addresses the issues raised as errors by the Appellant. Therefore, I write to concur in part and in the *583 result only in the interest of justice and judicial economy.
I. Habitual Drunkenness
¶ 30. A party seeking a divorce must prove the alleged ground, even in the absence of a defense by the other spouse. Lindsey v. Lindsey, 818 So.2d 1191, 1194 (¶ 13) (Miss.2002). A court may grant a divorce on the ground of habitual drunkenness if the plaintiff proves that: (1) the defendant frequently abused alcohol; (2) the alcohol abuse negatively affected the marriage; and (3) the alcohol abuse continued at the time of the trial. See Sproles v. Sproles, 782 So.2d 742, 747-48 (¶ 20) (Miss.2001); Deborah H. Bell, Bell on Mississippi Family Law § 4.02[6] (2005).
¶ 31. Even though Michael was denied the opportunity to defend himself, the record shows no proof to support the third element. At the final hearing, Jane testified, to the best of her knowledge, Michael no longer consumed alcohol. Because Jane provided no evidence that Michael continued to abuse alcohol, I would remand with instructions that the chancery court grant a fault divorce only after a showing of proof necessary to support all the elements of the alleged ground.
II. Visitation
¶ 32. The chancery court’s temporary order granted Jane custody of Cameron, and it granted Michael standard Farese[3] visitation, including every other weekend from Friday until Sunday. A year after the temporary order, Michael filed a motion for contempt, arguing that Jane had denied him the opportunity to visit with Cameron and had imposed restrictions on his visitation not included in the temporary order. In response, Jane asked the chancery court to modify the temporary order by granting Michael Sunday afternoon restricted visitation supervised by his parents.
¶ 33. The record does not indicate whether the chancery court ruled on the contempt motion. But during the final divorce hearing, Jane testified that she allowed Cameron to visit Michael only on Sunday afternoons. The final decree granted Jane full legal and physical custody of Cameron. The decree granted Michael visitation rights “as agreed upon between the parties ...,” but at Jane’s discretion. Aside from standard restrictions, the decree also enjoined Michael from operating a vehicle when he had physical custody of Cameron.
¶ 34. In determining a visitation schedule, the chancellor must consider the “best interest of the child ... ” — the paramount concern — and the noncustodial parent’s right to liberal, unrestricted contact with the minor child. Harrington v. Harrington, 648 So.2d 543, 545 (Miss.1994). Absent compelling circumstances, a noncustodial parent’s visitation “should be tantamount to custody with respect to the place and manner of exercise.... ” Cox v. Moulds, 490 So.2d 866, 868 (Miss.1986). Except for reasonable time limits, evidence must show that a restriction on the noncustodial parent’s visitation is necessary to prevent some adverse effect on the child. Harrington, 648 So.2d at 545. But when there is no substantial evidence in the record that a particular visitation restriction imposed by the chancellor is necessary, we will find manifest error and an abuse of discretion. Id.
¶ 35. Michael contends that the chancery court deprived him of reasonable visitation with Cameron. Particularly, he argues that nothing in the record suggests *584 Cameron’s best interest would be served by reducing visitation from the standard Farese visitation schedule to Jane’s discretion. Jane asserts the chancery court properly considered Cameron’s best interest and the fact that Michael habitually abuses alcohol and pain medication.
¶ 36. While the chancellor has broad discretion in deciding visitation schedules, I find no support in the record or in our case law for a visitation schedule that happens according to one parent’s discretion. Further, nothing in the final decree indicates the chancellor’s reason for reducing Michael’s visitation with Cameron or for restricting Michael’s vehicle use while with Cameron. I would remand with instructions that the chancery court fashion a specific visitation schedule that considers Cameron’s best interest; Michael’s right to liberal, unrestricted visitation; and the principle of fostering a relationship between the noncustodial parent and child.
III. Equitable Distribution
¶ 37. The final decree awarded Jane full use, title, and possession of the marital home, which had accrued approximately $57,000 in equity. Jane and Michael retained ownership of their respective retirement accounts, and Michael retained ownership of his workers’ compensation settlement.
¶ 38. Michael contends that the property-division award should be reversed because the chancellor failed to make Ferguson findings, to divide the equity from the marital home, and to divide the marital debt. See Ferguson v. Ferguson, 639 So.2d 921, 925 (Miss.1994). In response, Jane argues that the chancellor’s division should be upheld because she was not awarded alimony, ownership of a motorcycle and three vehicles, or any part of Michael’s workers’ compensation settlement.
¶ 39. In making an equitable distribution of property, a chancellor should: (1) classify assets as marital or separate, (2) determine the value of the assets, (3) equitably divide the marital property, and (4) award alimony as needed. See id.; McLaurin v. McLaurin, 853 So.2d 1279, 1285-86 (¶ 24) (Miss.Ct.App.2003) (noting that marital debts are also subject to equitable distribution). Both the Mississippi Supreme Court and this Court have reversed property-division awards not supported by written findings on the relevant Ferguson factors. See, e.g., Lauro v. Lauro, 847 So.2d 843, 847 (¶¶9-10) (Miss.2003); Thompson v. Thompson, 894 So.2d 603, 607 (¶¶ 19-21) (Miss Ct.App.2004).
¶40. The final decree here is insufficient, as it omits specific findings on the classification or value of the Turners’ marital assets and debts. Further, the record does not refer to any equitable-distribution factor. I would remand with instructions that the chancery court make specific findings consistent with Ferguson’s principles when it revisits the equitable-distribution of the Turners’ property.
IV. Attorney’s Fees
¶ 41. The chancellor has discretion to award attorney’s fees, subject to the appropriate findings. See McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). Generally, the party seeking payment should be unable to pay her attorney’s fees. See, e.g., Smith v. Smith, 614 So.2d 394, 398 (Miss.1993); Parker v. Parker, 980 So.2d 323, 329-30 (¶ 22) (Miss.Ct.App.2008).
¶ 42. The final divorce decree noted Jane’s “inability to pay” and awarded her $1,500 in attorney’s fees. But Jane never said that she was unable to pay; in fact, she had already paid her attorney’s fees. Instead, her testimony on this issue focused solely on Michael’s ability to pay. I would remand with instructions that if the *585 chancery court awards attorney’s fees to Jane, then it should make appropriate findings as to the Jane’s financial situation and her ability to pay.
¶ 48. Based on the above discussion, I respectfully concur in part and in the result.
IRVING, P.J., JOINS THIS OPINION.

. See Hamilton v. Hamilton, 755 So.2d 528, 530 n. 1 (Miss.Ct.App.1999) (explaining history and use of the Farese visitation schedule in Mississippi).