## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01642-COA

MELISSA CHRISTINE BLACK WEAVER                    APPELLANT

v.

RICHARD FRANKLIN WEAVER                           APPELLEE

DATE OF JUDGMENT:            10/04/2016
TRIAL JUDGE:                 HON. HAYDN JUDD ROBERTS
COURT FROM WHICH APPEALED:   RANKIN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      CHRISTOPHER A. TABB
ATTORNEYS FOR APPELLEE:      J. PEYTON RANDOLPH II
                             RICK D. PATT
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
DISPOSITION:                 AFFIRMED - 05/29/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., FAIR AND WESTBROOKS, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Melissa Weaver appeals the judgment of the Rankin County Chancery Court, which granted her and her husband Richard Franklin Weaver a divorce on the ground of irreconcilable differences and equitably divided the marital estate. She argues that the chancery court failed to properly consider the relative tax consequences when distributing the marital assets between her and Richard.

¶2.     Finding no error, we affirm.

FACTS

¶3.     On August 14, 2015, Melissa filed a complaint for divorce from Richard on the grounds of habitual cruel and inhumane treatment, and in the alternative, irreconcilable

differences. On March 2, 2016, the court entered an agreed temporary order. On May 5, 2016, the parties filed a consent to divorce on the ground of irreconcilable differences, and the issues of equitable division of the marital estate, alimony, and attorneys' fees were submitted to the court to decide. After a lengthy discovery period and a continuance, the trial was conducted on August 8, 2016, and August 31, 2016.

¶4. The court issued its judgment of divorce on October 4, 2016, finding that the marital estate had a value of $555,279.90, not including other property previously divided. The court awarded Richard fifty-five percent of the valued marital estate, and Melissa the remaining forty-five percent. The chancellor made a handwritten addition to his order, stating that: "[Melissa's attorney] did not approve this order as to form as he thought the order should mention 'tax consequences' but the [c]ourt entered this order without such language as that can be brought by the appropriate motion at a later date and time."

¶5. A hearing on Melissa's motion to reconsider—addressing the tax consequences of the distribution of marital assets—was held on October 20, 2016. During said hearing, she offered into evidence the expert testimony of John Dongieux, an attorney and certified public accountant. Ultimately, the court denied the motion, and this appeal followed.

DISCUSSION

¶6. The standard of review is succinctly addressed in *Rhodes v. Rhodes*, 52 So. 3d 430, 435 (¶15) (Miss. Ct. App. 2011) (citations and internal quotation marks omitted), as this Court found:

> Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record. We will not disturb a chancellor's factual findings unless the chancellor's decision was manifestly wrong or clearly erroneous, or the chancellor applied an improper legal standard. We do not substitute our judgment for that of the chancellor, even if we disagree with the findings of fact and would arrive at a different conclusion. But when reviewing a chancellor's interpretation and application of the law, our standard of review is de novo.

¶7. "In ordering an equitable distribution, chancellors are directed to (1) classify the parties' assets as marital or separate, (2) determine the value of those assets, and (3) divide the marital estate equitably based upon the factors set forth in *Ferguson*." *Rhodes*, 52 So. 3d at 436 (¶18). The first step in the court's analysis of assets in a divorce action is to determine which assets are separate property and which assets are marital property and thus subject to distribution between the parties. Pursuant to *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994), "[a]ssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." After valuing the marital property, the court distributes it using the factors laid out in *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). "In doing so, chancellors need not make findings on each and every *Ferguson* factor." *Chipley v. Chipley*, 210 So. 3d 1030, 1032 (¶6) (Miss. Ct. App. 2015). Among the factors to be considered by the court are the "[t]ax and other economic consequences . . . of the proposed distribution." *Ferguson*, 639 So. 2d at 928.

3

¶8.     Melissa's sole argument on appeal is that the trial court incorrectly found that there were no tax consequences attributable to the distribution of the marital property. She asserts that most of the marital estate that was distributed to her consisted of retirement and pension funds, which were subject to taxes in order to liquidate those assets. She notes that Richard received the real property. She cites *Louk v. Louk*, 761 So. 2d 878, 883 (¶¶12-13) (Miss. 2000), arguing that the Mississippi Supreme Court reversed the trial court's decision in that case since it did not do an analysis of the *Ferguson* factors and did not consider the tax consequences of the distribution of assets. She also cites *Davis v. Davis*, 832 So. 2d 492, 500-02 (¶¶30-38) (Miss. 2002), arguing that she will have a more likely need to liquidate assets in order to provide for herself and the children and that she should not bear the burden of paying taxes to convert the assets to cash.

¶9.     The court pointed out that there would be no tax consequences to Melissa if she rolled the money into her own retirement/pension account. However, she argues that the court failed to consider that because she received mostly retirement/pension funds as her part of the distribution of assets, she is more likely to have to withdraw some, if not all, of the funds to purchase a home and provide herself with necessities. She contends that the chancellor did not take the ten-percent-early-withdrawal penalty and the additional tax burdens into consideration.

¶10.    Richard responds that the chancellor was correct in his distribution of the couples' marital assets. He notes that, in the court's initial ruling, it specifically addressed the tax-

4

consequences issue, as the chancellor specifically stated that,

> Ms. Weaver has a vehicle from which she could have any money from a retirement transferred to her without incurring any tax penalty. Now, she would be – – she would certainly be penalized if she made a draw on any money, but that would be her choosing, but just the conveyance of money would not be penalizing to her.

Melissa also testified to that effect and had the following exchange with the chancellor:

[COURT]:	All right. Do you know whether or not Mr. Weaver's retirement plan can be – – whatever, if a dollar or if a hundred thousand or all of it – – could be rolled over into your account? Do you know?

[MELISSA]: Yes, sir.

[COURT]:	Without any penalty of taxing to you?

[MELISSA]: Correct. It can.

[COURT]:	Without any penalty of taxation to Mr. Weaver?

[MELISSA]: Yes.

[COURT]:	Okay.

[MELISSA]:	It's only taxed when you remove. It can be rolled over.

[COURT]:	So you have a vehicle which to receive any retirement without the penalty of taxation?

[MELISSA]:	Right.

Additionally, the court pointed out that Richard's main concern, with respect to the distribution, was the real property, and Melissa's main concern was money. The court also awarded Melissa periodic monthly alimony payments of $1,250. Richard asserts that

although Melissa contends that the division of the retirement account would cause her an insurmountable tax penalty, that should not be an issue because she can avoid those tax penalties through the entry of a qualified domestic relations order. *See Jones v. Jones*, 904 So. 2d 1143, 1148 (¶18) (Miss. Ct. App. 2004).

¶11. We find that the chancellor's decision was supported by substantial, credible evidence. The chancellor performed a thorough analysis of the *Ferguson* factors and specifically addressed the tax consequences associated with the distribution. He correctly noted that the issue of tax consequences is only one of several factors that the court considers in the equitable distribution of marital assets. The chancellor's finding—that there were no tax consequences—was based on the fact that a *transfer* of the assets would incur no tax consequences, and that either party would incur such if he or she decided to *withdraw* the retirement funds early. We find that the chancellor adequately considered the tax consequences attributable to the parties. As such, we find no issue with the chancellor's findings of fact and his ultimate distribution of the marital estate.

¶12. **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**