73 So.3d 576 (2011)
Michael TURNER, Appellant
v.
Jane TURNER, Appellee.
No. 2010-CA-00375-COA.
Court of Appeals of Mississippi.
November 1, 2011.
Richard Shane McLaughlin, Nicole H. McLaughlin, attorneys for appellant.
Jonathan W. Martin, attorney for appellee.
EN BANC.
MAXWELL, J., for the Court:
¶ 1. The Lee County Chancery Court entered an order allowing Michael Turner's divorce attorney to withdraw as counsel. In this same order, the chancellor set the hearing date for Michael's divorce trial for December 8, 2009. Michael *577 did not appear at the trial, yet the chancellor granted his wife, Jane Turner, a divorce, gave her custody of their son, awarded her attorney's fees, and distributed their marital property. Michael moved to set aside the divorce judgment and other awards, arguing he did not receive notice of the rescheduled trial, as required by Rule 5 of the Mississippi Rules of Civil Procedure. Although there was no evidence Michael's former attorney advised him of the new trial date nor any indication Michael had received actual notice of the rescheduled trial, the chancellor denied Michael's post-judgment motion, finding delivery of the order to Michael's withdrawing attorney satisfied the service of notice requirements of Rule 5(b).
¶ 2. We find at the moment the chancellor granted Michael's attorney's request to withdraw, Michael was no longer represented by an attorney of record. Thus, Rule 5(b) directed Michael be served, not his former attorney who no longer represented Michael in the divorce. Because Michael was not served with notice of the December 8, 2009 hearing, we find the resulting divorce judgment void. We reverse the chancery court's denial of Michael's motion to set aside the judgment and remand this case to the chancery court for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY
¶ 3. In 2005, Jane and Michael began protracted divorce proceedings, which included a dispute over the custody and visitation of their son.
¶ 4. The record from 2006 shows a series of set and reset trial dates and an agreed temporary custody order. In March 2007, Michael filed a motion for contempt, alleging Jane had not permitted him to exercise the visitation agreed to in the temporary order. Jane responded in November 2007. The record is silent for the year of 2008. But in early 2009, the chancery court issued a series of orders setting the divorce for trial. The last order, which was filed on September 8, 2009, set the hearing for November 12, 2009. Our review concerns the notice issues surrounding the withdrawal of Michael's attorney on November 12, 2009.
¶ 5. According to Michael, he appeared at the courthouse on the morning of November 12 but did not, at first, see his attorney, Jak Smith. Eventually, from the back of the courtroom, Michael saw Smith at the bench talking to the chancellor and Jane's counsel.
¶ 6. There is no transcript of this bench conference. But we know from the chancellor's resulting order that Smith made an oral motion to withdraw as counsel for Michael. Although Uniform Chancery Court Rule 1.08 requires a motion to withdraw be in writing, there is no written motion in the record. We are neither able to discern from the record Smith's offered reasons for his withdrawal nor determine whether he gave Michael and Jane's counsel the required reasonable notice, also an explicit prerequisite of Rule 1.08. Further, there is no indication that Michael received five days' notice, to which he was entitled, before a hearing on a motion to withdraw may be conducted. See M.R.C.P. 6(d); McDonald v. McDonald, 850 So.2d 1182, 1188 (¶ 19) (Miss.Ct.App. 2002).
¶ 7. All we have is the resulting order, dated November 12 and entered on November 13, that simultaneously (1) allowed Smith to withdraw as Michael's counsel over Jane's attorney's objection and (2) continued the divorce trial to December 8, 2009. The order shows Smith "agreed as to form" of the order and signed it as "counsel for Defendant."
*578 ¶ 8. According to Michael, Smith left the bench conference and found him in the back of the courtroom. Smith led Michael to a conference room, where they discussed Smith's withdrawal and offer of assistance in finding Michael new counsel. But they did not, Michael asserts, discuss the reset trial date. It is undisputed that no record support exists to show Michael had actual notice of the subsequent trial. According to a later stipulation offered during Michael's hearing on his request for a new trial, both parties agreed Smith could not recall whether he did or did not give Michael a copy of the order. The parties also stipulated that Smith's office had no record of mailing Michael a copy of the order. Jane's attorney testified he gave Smith a copy of the order but not Michael.
¶ 9. Though the record indicates Michael had not missed any prior court hearings, he did not appear for the December 8 trial. However, the chancellor proceeded with the hearing, granting Jane a divorce on the ground of habitual drunkenness and awarding her custody of their son. He also awarded her attorney's fees and divided the marital property. Nine days later, on December 17, 2009, Michael filed a motion to set aside the divorce and for a new trial. Michael argued the divorce judgment was void and should be set aside under Mississippi Rule of Civil Procedure 60(b), because Michael was not properly notified of the December 8 hearing and, thus, deprived of his due-process rights. In the alternative, Michael argued certain provisions of the divorce decree should be altered or amended under Mississippi Rule of Civil Procedure 59(e).
¶ 10. After conducting a hearing, the chancellor denied the motion, specifically finding: "Service of process of the November 12, 2009 Order was in compliance with M.R.C.P. 5" and "[no] good reason or just cause for [Michael's] failure to appear at the December 8, 2009 hearing." The chancellor also declined to alter his previous decree.
¶ 11. Michael timely appealed.

DISCUSSION
¶ 12. On appeal, Michael argues the chancellor should have granted his post-judgment motion for both (1) the failure to provide sufficient notice under Rule 5 and (2) errors in awarding Jane a divorce, custody, equitable distribution, and attorney's fees. We solely address the notice issue. Because we find the divorce judgment is void for lack of notice, each accompanying award in the judgment is also without legal effect. Peterson v. Peterson, 797 So.2d 876, 879 (¶ 12) (Miss. 2001).
¶ 13. "Although `the grant or denial of a 60(b) motion[1] is generally within *579 the discretion of the trial court, if the judgment is void, the trial court has no discretion. The court must set the void judgment aside.'" Clark v. Clark, 43 So.3d 496, 501 (¶ 21) (Miss.Ct.App.2010) (quoting Soriano v. Gillespie, 857 So.2d 64, 69-70 (¶ 22) (Miss.Ct.App.2003)). "Specifically, a judgment is void `. . . if [the court] acted in a manner inconsistent with due process of law.'" Id. (quoting Morrison v. Miss. Dep't of Human Servs., 863 So.2d 948, 952 (¶ 13) (Miss.2004)). While Clark involved a void judgment based on a failure to serve process under Mississippi Civil Procedure Rule 4, this court has also voided a judgment for failure to serve notice of trial under Rule 5(b). McClain v. White, 738 So.2d 306, 308 (¶¶ 12-14) (Miss.Ct.App.1999).[2] This is because "[n]otice, whether of the time and place of a hearing, the contents of a complaint, or of the specific nature of a criminal charge, is the essence of due process." Johnson v. Weston Lumber & Bldg. Supply Co., 566 So.2d 466, 469 (Miss.1990).
¶ 14. Rule 5(a) of the Mississippi Rules of Civil Procedure requires that orders and written notices "shall be served upon each of the parties" in the method provided by Rule 5(b). M.R.C.P. 5. Rule 5(b) directs: "Whenever under these rules service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon such attorney unless service upon the party himself is ordered by the court." M.R.C.P. 5(b)(1). Under Rule 5(b), service is made upon the attorney with "two basic exceptions"the party is not represented or the court orders otherwise. Duckworth v. Strite, 748 So.2d 794, 797(11) (Miss.Ct.App.1999) (quoting 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1145 (1987)). "Under the first [exception], service on a party is valid indeed it is obligatoryif a party does not have an attorney or if the attorney has ceased to represent the party[.]" Id. (emphasis added).
¶ 15. Having been permitted to withdraw, Smith undoubtedly "ceased to represent" Michael. Thus, we find the first exception to service on an attorney applied. The dissent essentially casts the chancellor's simultaneous orderwhich both allowed Michael's attorney to withdraw and reset the divorce trialas an unsolvable chicken-versus-egg predicament, concluding because we cannot know "which came first," we should conclude that Smith signed the order "as counsel for the defendant" while he was still representing Michael. But we disagree with the dissent that an attorney can both be relieved as counsel of record and be relied upon to agree to other matters in the *580 litigation. In answering "which came first," we are guided by precedent that draws a clear line of demarcation when an attorney withdraws, irrespective of his continuing ethical duties.
¶ 16. While the dissent finds disfavor with our reliance on one of this court's leading Rule 5(b) cases, Duckworth, it offers up nothing by manner of either rule or case law to contradict our conclusion. Instead, the dissent declares, without citation to any authority, that because Smith's ethical duties to Michael continued after the order of withdrawal, service upon him as Michael's representative was sufficienteven though the court had ordered Smith's withdrawal from the case.
¶ 17. While we agree ethical duties remained, we disagree that the Mississippi Rules of Professional Conduct supplant or in any way augment Mississippi's procedural notice requirements or this court's Rule 5(b) analysis. See Miss. Rules of Prof'l Conduct, Scope (discussing the purpose of the professional rules is to provide "lawyer's self-assessment" and "structure for regulating conduct through disciplinary agencies"). To determine who must be served under Rule 5(b)the party or its attorney of recordwe ask when did the attorney cease to be "of record." M.R.C.P. 5(b). We focus solely on the time of withdrawal, and not on any attendant ethical duties that may remain. Polk v. Jones, 20 So.3d 710, 714-15 (¶¶ 17-18) (Miss.Ct.App.2009).
¶ 18. In Polk, this court held that a chancery court's order directing a partition sale, sent to Frank Polk's attorney more than a month before the attorney filed a motion to withdraw, complied with Rule 5(b)even though Frank's attorney admitted he never gave Frank actual notice of the sale due to their deteriorating relationship. Id. at 714 (¶ 18). At the time notice was sent, "[a]s far as the chancellor knew Frank was represented by counsel." Id. Because Frank's attorney "was obligated to act in his capacity as counsel for Frank until allowed to withdraw by the chancellor[,]. . . service of [his attorney] was appropriate." Id. at 715 (¶ 18).
¶ 19. In McClain, this court found that notice of a hearing sent directly to one of the parties, Donald McClain, was insufficient, voiding the resulting default judgment obtained at that hearing. McClain, 738 So.2d at 308 (¶¶ 12-14). McClain admitted he had discharged his attorney, but the trial court had not granted his attorney an order allowing withdrawal under Uniform Rule of Circuit and County Court Practice 1.13. Id. at 308 (¶ 14). Because, according to the record, McClain's attorney still represented McClain, Rule 5(b) directed notice be sent to McClain's attorney. Id.
¶ 20. Conversely, in Duckworth, notice sent directly to the party complied with Rule 5(b) because Cooper Duckworth's first attorney had withdrawn and his new attorney had yet to appear of record. Duckworth, 748 So.2d at 797 (¶¶ 11-12). Consequently, "at the time [service was required] Duckworth was not represented by counsel." Id. at 797 (¶ 12). The fact Duckworth's new attorney had established an attorney-client relationship and was actively working on the matter did not factor into this court's Rule 5(b) analysis.
¶ 21. Here, Smith was allowed to withdraw in the same order resetting the hearing for December 8, 2009. In Fairchild v. General Motors Acceptance Corp., 254 Miss. 261, 265, 179 So.2d 185, 187 (1965), the Mississippi Supreme Court held that an attorney who had moved to withdraw his representation could not at the same time exercise authority to act on his client's behalf on other matters. While "withdrawal is prospective [and] does not erase those steps in the proceedings already *581 taken," withdrawal likewise prevents an attorney from taking future steps on behalf of his client. Id. Thus, the supreme court reversed an action taken by an attorney in his client's litigation when that action was "coincident with the attorney's withdrawal from the case." Id. We find Smith could not simultaneous withdraw as Michael's representative and be "counsel for the defendant" for purposes of notice of the December 8 hearing. Id.; see Johnson, 566 So.2d at 468 (finding the plaintiff was without counsel "as of the date of the order allowing [plaintiff's attorney] to withdraw"). The chancellor reasoned that because the order was not entered until November 13, 2009, Smith was technically Michael's attorney until the following day. Thus, Michael received notice of the hearing through his "attorney of record" because Smith left the courthouse on November 12 with a copy of the order. But applying this same reasoning, the December 8 trial date was also not set until November 13, the date the order was entered. So at the moment the hearing was set, Michael was without counsel. While ethical duties continued, there is no dispute that at this point Smith could not have filed pleadings, responded to motions, or otherwise acted on Michael's behalf. Fairchild, 254 Miss. at 265, 179 So.2d at 187. Thus, having been let out of the case, we find Smith no longer had authority to receive Rule 5(b) service on Michael's behalf. See McClain, 738 So.2d at 308 (¶¶ 12-14) (finding service of attorney under Rule 5(b) depends on whether there was on order of withdrawal); Polk, 20 So.3d at 715 (¶ 18) (finding obligation to receive service on behalf of client continued until allowed to withdraw).
¶ 22. The dissent finds Jane's counsel reasonably relied on Smith to serve his former client, Michael, with notice. Rule 5(b) simply says "service shall be made." M.R.C.P. 5(b). Though Rule 5(b) does not specify who shall make service, we find it unreasonable to conclude that an attorney who had been permitted by the court to withdraw from the case, and is no longer counsel of record, is the person obligated to provide service. To the contrary, a leading treatise has recognized that according to Rule (5)(b) "service on a party. . . is obligatory . . . if the attorney has ceased to represent the party[.]" 4A Wright & Miller, Federal Practice and Procedure § 1145 (1987).
¶ 23. We find Jane's counsel did not fulfill that obligation by handing Smith, who had just been permitted to withdraw, a copy of the order. McClain, 738 So.2d at 308 (¶ 14). This is particularly so, considering the permitted manner of withdrawal, which was apparently the result of an oral motion to withdraw made outside of Michael's presencewhen Uniform Chancery Court Rule 1.08 expressly requires a written motion and reasonable prior notice to the client and opposing counsel and Civil Procedure Rule 6(d) mandates five days' notice before the court may hold a hearing on an attorney's motion to withdraw. UCCR 1.08; M.R.C.P. 6(d).
¶ 24. Based on these circumstances and considering the contested divorce and custody issues at handwe choose to err on the side of due process and strict compliance with Rule 5(b) and find notice was not sufficient to apprise Michael of the December 8 hearing.
¶ 25. We recognize chancellors are frequently confronted with situations where attorneys seek withdrawal but the court must set and conduct future trials or hearings. The dictates of Rule 1.08 and Rule 6(d) should certainly be followed when withdrawal requests are made. But in cases where permission to withdraw is granted outside of the presence of the *582 requesting attorney's client, to avoid future notice problems, it is certainly permissible for a chancellor to enter a written order scheduling a future hearing, which expressly conditions the requesting attorney's withdrawal only upon submission of proof to the court that he or she has given notice of the subsequent hearing to the client. Another suitable method, under this circumstance, would be to allow withdrawal of counsel subject to the condition that subsequent papers may continue to be served upon counsel for forwarding purposes as the judge may direct, unless and until the client appears by other counsel or pro se.
¶ 26. In Johnson, the Mississippi Supreme Court reversed the denial of a Rule 60 motion to set aside a judgment because the record did not show, after the entry of an order to allow counsel to withdraw, the plaintiff, now without counsel, had been notified of the trial date. Johnson, 566 So.2d at 468-69. "`Even though the result might be the same every defendant or respondent has the right to notice in a court proceeding involving him, and to be present, and to introduce evidence at the hearing.' Where that valuable right is denied there must follow a reversal." Id. at 468 (quoting Edwards v. James, 453 So.2d 684 (Miss.1984)).
¶ 27. For the same reasons, we reverse the denial of Michael's motion to set aside the divorce judgment. Because we find the December 8 judgment void for lack of due process, we remand this matter to the chancery court without further comment. When a divorce is invalidated, "all matters decided as a result of the divorce decree are null and void and should be brought in another hearing." Peterson, 797 So.2d at 879 (¶ 12). See also Lauro v. Lauro, 847 So.2d 843, 850 (¶ 18) (Miss. 2003) (explaining reversal of a chancellor's property distribution also requires reversal of her award of attorney's fees); Clark, 43 So.3d at 502 (¶ 25) (explaining that property distribution, attorney's fees, and lump-sum and periodic alimony awards must be reversed when accompanying a void divorce). Thus, we reverse the December 8, 2009 grant of divorce and all resulting decisions regarding custody, property distribution, and attorney's fees and remand this case to the chancery court for further proceedings consistent with this opinion.
¶ 28. THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., CONCURS, BARNES, J., CONCURS IN RESULT ONLY. RUSSELL, J., CONCURS IN PART AND IN THE RESULT JOINED BY IRVING, P.J. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ISHEE AND CARLTON, JJ. MYERS AND ROBERTS, JJ., NOT PARTICIPATING.
RUSSELL, J., concurring in part and in result:
¶ 29. I agree with the majority that Michael Turner's lack of notice of the hearing date requires the divorce to be set aside. But the chancery court in this case also granted a fault-based divorce without the required proof, deprived Michael of reasonable visitation with Cameron Turner, failed to make written findings on the relevant equitable-distribution factors, and awarded attorney's fees to Jane Turner without proof of her inability to pay. Contrary to the dissent, this opinion is not advisory, but simply addresses the issues raised as errors by the Appellant. Therefore, I write to concur in part and in the *583 result only in the interest of justice and judicial economy.

I. Habitual Drunkenness
¶ 30. A party seeking a divorce must prove the alleged ground, even in the absence of a defense by the other spouse. Lindsey v. Lindsey, 818 So.2d 1191, 1194 (¶ 13) (Miss.2002). A court may grant a divorce on the ground of habitual drunkenness if the plaintiff proves that: (1) the defendant frequently abused alcohol; (2) the alcohol abuse negatively affected the marriage; and (3) the alcohol abuse continued at the time of the trial. See Sproles v. Sproles, 782 So.2d 742, 747-48 (¶ 20) (Miss. 2001); Deborah H. Bell, Bell on Mississippi Family Law § 4.02[6] (2005).
¶ 31. Even though Michael was denied the opportunity to defend himself, the record shows no proof to support the third element. At the final hearing, Jane testified, to the best of her knowledge, Michael no longer consumed alcohol. Because Jane provided no evidence that Michael continued to abuse alcohol, I would remand with instructions that the chancery court grant a fault divorce only after a showing of proof necessary to support all the elements of the alleged ground.

II. Visitation
¶ 32. The chancery court's temporary order granted Jane custody of Cameron, and it granted Michael standard Farese[3] visitation, including every other weekend from Friday until Sunday. A year after the temporary order, Michael filed a motion for contempt, arguing that Jane had denied him the opportunity to visit with Cameron and had imposed restrictions on his visitation not included in the temporary order. In response, Jane asked the chancery court to modify the temporary order by granting Michael Sunday afternoon restricted visitation supervised by his parents.
¶ 33. The record does not indicate whether the chancery court ruled on the contempt motion. But during the final divorce hearing, Jane testified that she allowed Cameron to visit Michael only on Sunday afternoons. The final decree granted Jane full legal and physical custody of Cameron. The decree granted Michael visitation rights "as agreed upon between the parties . . .," but at Jane's discretion. Aside from standard restrictions, the decree also enjoined Michael from operating a vehicle when he had physical custody of Cameron.
¶ 34. In determining a visitation schedule, the chancellor must consider the "best interest of the child . . ."the paramount concernand the noncustodial parent's right to liberal, unrestricted contact with the minor child. Harrington v. Harrington, 648 So.2d 543, 545 (Miss.1994). Absent compelling circumstances, a noncustodial parent's visitation "should be tantamount to custody with respect to the place and manner of exercise. . . ." Cox v. Moulds, 490 So.2d 866, 868 (Miss.1986). Except for reasonable time limits, evidence must show that a restriction on the noncustodial parent's visitation is necessary to prevent some adverse effect on the child. Harrington, 648 So.2d at 545. But when there is no substantial evidence in the record that a particular visitation restriction imposed by the chancellor is necessary, we will find manifest error and an abuse of discretion. Id.
¶ 35. Michael contends that the chancery court deprived him of reasonable visitation with Cameron. Particularly, he argues that nothing in the record suggests *584 Cameron's best interest would be served by reducing visitation from the standard Farese visitation schedule to Jane's discretion. Jane asserts the chancery court properly considered Cameron's best interest and the fact that Michael habitually abuses alcohol and pain medication.
¶ 36. While the chancellor has broad discretion in deciding visitation schedules, I find no support in the record or in our case law for a visitation schedule that happens according to one parent's discretion. Further, nothing in the final decree indicates the chancellor's reason for reducing Michael's visitation with Cameron or for restricting Michael's vehicle use while with Cameron. I would remand with instructions that the chancery court fashion a specific visitation schedule that considers Cameron's best interest; Michael's right to liberal, unrestricted visitation; and the principle of fostering a relationship between the noncustodial parent and child.

III. Equitable Distribution
¶ 37. The final decree awarded Jane full use, title, and possession of the marital home, which had accrued approximately $57,000 in equity. Jane and Michael retained ownership of their respective retirement accounts, and Michael retained ownership of his workers' compensation settlement.
¶ 38. Michael contends that the property-division award should be reversed because the chancellor failed to make Ferguson findings, to divide the equity from the marital home, and to divide the marital debt. See Ferguson v. Ferguson, 639 So.2d 921, 925 (Miss.1994). In response, Jane argues that the chancellor's division should be upheld because she was not awarded alimony, ownership of a motorcycle and three vehicles, or any part of Michael's workers' compensation settlement.
¶ 39. In making an equitable distribution of property, a chancellor should: (1) classify assets as marital or separate, (2) determine the value of the assets, (3) equitably divide the marital property, and (4) award alimony as needed. See id.; McLaurin v. McLaurin, 853 So.2d 1279, 1285-86 (¶ 24) (Miss.Ct.App.2003) (noting that marital debts are also subject to equitable distribution). Both the Mississippi Supreme Court and this Court have reversed property-division awards not supported by written findings on the relevant Ferguson factors. See, e.g., Lauro v. Lauro, 847 So.2d 843, 847 (¶¶ 9-10) (Miss. 2003); Thompson v. Thompson, 894 So.2d 603, 607 (¶¶ 19-21) (Miss Ct.App.2004).
¶ 40. The final decree here is insufficient, as it omits specific findings on the classification or value of the Turners' marital assets and debts. Further, the record does not refer to any equitable-distribution factor. I would remand with instructions that the chancery court make specific findings consistent with Ferguson's principles when it revisits the equitable-distribution of the Turners' property.

IV. Attorney's Fees
¶ 41. The chancellor has discretion to award attorney's fees, subject to the appropriate findings. See McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). Generally, the party seeking payment should be unable to pay her attorney's fees. See, e.g., Smith v. Smith, 614 So.2d 394, 398 (Miss. 1993); Parker v. Parker, 980 So.2d 323, 329-30 (¶ 22) (Miss.Ct.App.2008).
¶ 42. The final divorce decree noted Jane's "inability to pay" and awarded her $1,500 in attorney's fees. But Jane never said that she was unable to pay; in fact, she had already paid her attorney's fees. Instead, her testimony on this issue focused solely on Michael's ability to pay. I would remand with instructions that if the *585 chancery court awards attorney's fees to Jane, then it should make appropriate findings as to the Jane's financial situation and her ability to pay.
¶ 43. Based on the above discussion, I respectfully concur in part and in the result.
IRVING, P.J., JOINS THIS OPINION.
GRIFFIS, P.J., dissenting:
¶ 44. I respectfully dissent.
¶ 45. Judge Russell's concurring opinion appears to help the chancellor with his decision on remand. If indeed the judgment is void, there is no reason for this Court to review any error in the "void" judgment. This Court should not issue advisory opinions. See Hughes v. Hosemann, 68 So.3d 1260, 1263 (¶ 7) (Miss.2011).
¶ 46. The real issue here is notice or due process. The majority reverses the chancellor and finds that the judgment was void. I disagree.
¶ 47. The chancery court had personal jurisdiction over Michael Turner. In 2005, Jane Turner filed a complaint, and Michael filed an answer and counterclaim. Michael did not raise insufficiency of process or service of process as a defense. Personal jurisdiction was established, and Michael was properly before the chancery court under Rule 4 of the Mississippi Rules of Civil Procedure. Jak Smith was Michael's attorney.
¶ 48. The trial was set for hearing on November 12, 2009. Notice of the November 12th hearing was sufficient under Rule 5 of the Mississippi Rules of Civil Procedure. If the hearing had been held, as scheduled, there is no doubt that any judgment rendered that day would have been a valid and enforceable final decree.
¶ 49. This appeal is based on what happened the morning of November 12th. Michael testified that he was present at the courthouse, sitting in the back of the courtroom. Smith and Jane's counsel appeared before the chancellor. Smith made an oral motion to withdraw as Michael's counsel. The chancellor granted the motion and entered this order:
Came on for hearing, this the 12th day of November, 2009, on Plaintiff's Complaint for Divorce and Defendant's Counter-Complaint, and the Defendant's counsel having made an ore tenus Motion to Withdraw as Counsel of Record, and the Court having considered the Motion, does hereby Find and Order as follows:
1. Over the objection of Plaintiff, the Hon. Jak M. Smith, counsel for Defendant, is hereby allowed to withdraw as counsel of record for Michael Turner. The Court finds that counsel has demonstrated good cause for his withdrawal and no undue prejudice to Defendant will result. Defendant shall have ten (10) days from the date of this Order to secure new counsel. [The language in italics handwritten by the chancellor.]
2. Further, this matter is hereby reset for trial on the merits on the December 8th, 2009[,] at 9:30 a.m. at the Prentiss County Chancery Building located in Booneville, MS. No further continuances shall be granted in this cause. [This language was struck through by the chancellor and initialed.]
3. Further, the Court hereby releases Robbie Byers, the Guardian ad litem for the minor child from her capacities and duties in this cause.
So ORDERED, ADJUDGED, and DECREED this the 12th day of November, 2009.
/s/ Talmage D. Littlejohn
Chancellor
*586
 Agreed as to form:
/s/ Jak M. Smith
Jak M. Smith, counsel for Defendant
/s/ Jonathan W. Martin
Jonathan W. Martin, counsel for Plaintiff
¶ 50. The majority does not find that Rule 5(b) required the chancellor to serve Michael with notice of the order. On this, the majority is correct. Chancellors do not and should not be obligated or responsible for the service of notice.
¶ 51. However, the majority finds that Jane had to serve Michael with notice of the order. The majority finds that "Smith no longer had authority to receive Rule 5(b) service on Michael's behalf," and that "Jane's counsel did not fulfill that obligation by handing Smith, who had just been permitted to withdraw, a copy of the order." To support this conclusion, the majority cites McClain v. White, 738 So.2d 306 (Miss.Ct.App.1999). McClain is not applicable here.
¶ 52. In McClain, Donald McClain, through his attorney Russell Reed, filed a complaint, on November 18, 1993, for alienation of affection against John White. Id. at 307 (¶ 4). White, through his attorney William Parlin, answered and filed a counterclaim. Id. In 1996, White filed a motion for trial setting and sent a copy to McClain, but not to his attorney. Id. at (¶ 5). The court administrator set the case for trial and sent the notice to McClain and Parlin, but not to Reed. Id. at (¶ 6). On the date set for trial, McClain did not appear. His complaint was dismissed and a judgment was entered for White on the counterclaim. Id. at (¶¶ 7-8). In 1997, McClain filed a motion to set aside the judgment. Id. at (¶ 9). At the hearing, McClain admitted that he had terminated Reed as his lawyer. Id. at 308 (¶ 13). The trial court denied the motion. Id. at 307 (¶ 9). This Court reversed the trial court and set aside the judgment. Id. at 308 (¶ 14). The Court determined that the notice of trial setting had not been sent to McClain's counsel of record, even though he had been terminated by McClain. Id. The Court reasoned that Rule 5(b) required that McClain's attorney of record be served with notice. Id.
¶ 53. Here, in my opinion, Jane did not have an obligation or duty to serve Michael with a copy of the November 12th order. The November 12 order clearly indicated that the case was properly set for hearing on that date and both parties were present, represented by counsel. Jane clearly had proper Rule 5 notice for the November 12th hearing. More disturbing is the fact that Jane's counsel testified that on the morning of November 12th, he copied the order and handed to Smith, while Smith was talking to Michael near the copy machine in the courthouse. Jane's counsel did not have a further duty to mail or serve Michael with a copy of that order. Michael's counsel signed the November 12th order "as counsel for" Michael; thus, Jane had the right to rely on the entry of that order to carry forward notice til the trial that was scheduled on December 8th. I conclude that Jane had proper process for the November 12th and December 8th hearings. I cannot find any error by Jane's counsel in giving additional notice to Michael of the December 8th hearing date.
¶ 54. If both parties appeared before the court (which they did on November 12th), and at the time are represented by counsel (which they were on November 12th), then there is no requirement under Rule 5 or any other rule that either individual party must be served after the court enters an order that is "agreed as to form" (which it was). I simply cannot find any authority that would require anyone other than Michael's own withdrawing counsel to *587 provide Michael with notice of the December 8th trial setting.
¶ 55. Michael's lawyer, Smith, did have a duty to provide Michael with notice of his withdrawal and the continuance of the hearing to a date certain. Rule 1.16(d) of the Mississippi Rules of Professional Conduct provides: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel,. . . ." The Rules of Professional Conduct[4] clearly provide that the lawyer's representation of the client does not end or terminate until the lawyer gives the client "reasonable notice." Smith continued to be Michael's attorney until he gave his client notice of the withdrawal. Thus, Smith's withdrawal as counsel for Michael was not effective until he notified Michael of the November 12th order, which continued the hearing until December 8th. Since Smith signed the November 12th order "as counsel for Defendant" Michael, then Smith alone had the duty to notify him of the December 8th hearing date.
¶ 56. The majority disagrees with this conclusion, yet it cites no authority to indicate when the attorney-client relationship between Smith and Michael was terminated. In Barber v. Barber, 608 So.2d 1338, 1340 (Miss.1992), the supreme court considered whether notice was proper under Rule 5(b). There, the court recognized that after the chancellor entered the judgment and her motion for reconsideration, Emma Lou Barber's attorney "successfully withdrew as counsel" before the appeal was filed. Id. at 1339. The court does not elaborate on what was necessary to withdraw "successfully" as counsel, but it certainly implies that certain steps must be taken to do so.
¶ 57. Here, it is important to determine when Smith "successfully" withdrew as Michael's counsel. Smith represented Michael at the November 12th hearing. He signed the order as "counsel for Defendant." Thus, Michael could not "successfully withdraw" as counsel until he notified Michael of the withdrawal. The case was rescheduled and set for hearing prior to Smith's "successful withdrawal."
¶ 58. Based on my review of the record, it is clear that a hearing was properly scheduled for November 12, 2009. That day, the chancery court had jurisdiction over the parties and the subject matter. At the hearing, Smith represented Michael. Smith asked the chancellor for permission to withdraw as counsel. The chancellor granted the motion for Smith to withdraw and continued or reset the case for a hearing on December 8, 2009. After *588 the entry of this order, no further action was required of the chancellor or Jane. Indeed, the matter was properly set for December 8, 2009. Smith alone had the duty to advise Michael of the chancellor's order and the date that the case was rescheduled.
¶ 59. The fact that Smith failed to notify his client of the final hearing is not a sufficient basis for this Court to find the chancellor committed error or that Jane did not have proper process upon Michael. Michael's failure to appear was not the result of any error by the chancellor; instead, it was due only to his counsel's omission.
¶ 60. The majority cites several cases. I am of the opinion that these cases do not support the majority's decision. I also note that most of these cases were not cited in the Michael's brief.
¶ 61. The majority cites Clark v. Clark, 43 So.3d 496, 501 (¶ 21) (Miss.Ct.App. 2010), as its standard of review for the proposition that "if the judgment is void, the trial court has no discretion. The court must set the void judgment aside." Clark considered a case where the defendant was not served with proper process. There, the defendant was served with a summons under Rule 81 of the Mississippi Rules of Civil Procedure to initiate a divorce action when he should have been served a summons under Rule 4. Id. at (¶¶ 10-17). This Court determined that the chancellor lacked personal jurisdiction to enter the divorce judgment. Id. at (¶ 17). Clark provides no guidance here. The chancery court acquired personal jurisdiction over Michael because he was properly served under Rule 4.
¶ 62. Along with Clark, the majority cites Morrison v. Mississippi Department of Human Services, 863 So.2d 948 (Miss. 2004). Mississippi Department of Human Services filed a contempt action against Morrison. The chancellor found him in contempt of an earlier order that modified his child support obligation. Id. at 949 (¶ 1). Morrison appealed and argued that he had not been properly served with process before the modification order was entered. Id. Morrison claimed that he had not been properly served under Rule 81. Id. at 950 (¶ 7). There was no proof of service in the court record. Id. at (¶ 10). The supreme court found a due-process violation because Morrison did not receive the required notice under Rule 81. Id. at 954 (¶ 21). Morrison provides no guidance here. There is no dispute that the chancery court obtained personal jurisdiction over Michael based on Rule 4 service.
¶ 63. In Duckworth v. Strite, 748 So.2d 794, 795 (¶ 2) (Miss.Ct.App.1999), Strite filed an open account collection action and served the defendant, Cooper Duckworth. Through counsel, Duckworth answered the complaint. Id. Strite filed discovery requests that were not answered and then filed a motion to compel. Duckworth's attorney was not able to contact him and moved to withdraw. Id. at (¶ 3). On August 5, 1996, the court entered an order that allowed the attorney to withdraw and later entered an order compelling a response to the discovery. Id. When Duckworth did not respond, Strite filed a motion for sanctions. Strite then filed an application for default, motion for default judgment, and a motion for writ of inquiry. Id. at (¶ 4). The court set aside Duckworth's answer and set a hearing for the motion for default on November 13, 1996. Id.
¶ 64. Strite sent the pleadings and notice of hearing to Duckworth three times by certified mail. Id. at (¶ 5). The last notice was mailed on November 6, 1996. Before November 6th, Duckworth had retained a new attorney, Wendell James. James was concerned with Duckworth's *589 situation and prepared an answer and faxed it to Strite's attorney on November 7, 1996, and filed it on November 12th. Id. James was not aware that the motion for default judgment had been set for hearing on November 13th. Id. at 795-96 (¶ 5). On November 13th, the court considered the motion even though Strite and James were not present. Id. at 796 (¶ 6). The court entered a default judgment for over $36,000 against Duckworth. Id.
¶ 65. Duckworth then filed a motion to set aside the default judgment. Id. at (¶ 7). The trial court denied the motion, and the appeal was deflected to this Court. Id. Chief Judge Lee's opinion affirmed the trial court's decision, and his analysis was concise, stating:
Duckworth contends that Strite failed to comply with the notice requirements of M.R.C.P. 5(b) because it mailed the notice of the November 13, 1996 hearing upon Strite's motion for default judgment to him rather than his attorney. M.R.C.P. 5(b) provides:
Whenever under these rules service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon such attorney unless service is upon party himself is ordered by the court.
According to Duckworth's own statement of the facts in his brief, Strite did know that Duckworth's first counsel of record had withdrawn but could not have known that Duckworth had retained James to represent him until after Strite had mailed the notice of the hearing directly to him. In discussing the federal counterpart to this rule of civil procedure, Wright and Miller's treatise states:
There are two basic exceptions to the rule that papers be served on the attorney. Under the first, service on a party is validindeed it is obligatoryif a party does not have an attorney or if the attorney has ceased to represent the party (citations omitted).
4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1145 (1987).
Strite correctly mailed the notice directly to Duckworth because at the time Duckworth was not represented by counsel. As such, there is no merit to this asserted error.
Duckworth, 748 So.2d at 796-97 (¶¶ 11-12) (footnote omitted).
¶ 66. In Duckworth, this Court correctly determined that service was proper because Strite knew Duckworth was not represented by counsel at the time. Id. at (¶ 12). The facts of this case are not similar to Duckworth. If it provides any authority, Duckworth supports my conclusion. Here, the chancellor reset the case for hearing in the November 12th, and Michael was represented by counsel in that order. Smith signed the order as "counsel for Defendant." Thus, Michael had proper notice that the hearing was set for December 8th. Nothing more was to be done by Jane and certainly not by the chancellor. Smith, though, had remaining duties to Michael. As Michael's lawyer, Smith clearly had a duty to provide Michael with notice of his withdrawal and the continuance of the hearing to a date certain. See Miss. R. Prof'l Conduct 1.16(d). Smith's representation did not end until he gave Michael "reasonable notice." Smith's withdrawal as counsel for Michael was not effective until he notified Michael of the November 12th order, which continued the hearing until December 8th. Duckworth neither contradicts my conclusion nor support's the majority's conclusion.
¶ 67. The majority cites Johnson v. Weston Lumber & Bldg. Supply Co., 566 *590 So.2d 466, 467 (Miss.1990), for the proposition that "Smith could not simultaneous[ly] withdraw as Michael's representative and represent Michael for purposes of notice of the December 8 hearing." The court in Johnson ruled:
The real gravamen of this appeal occurred in late October of 1987. Johnson and his counsel became embroiled in a dispute regarding attorney fees which resulted in Johnson's counsel filing a motion to withdraw on October 15, 1987, with a hearing noticed for October 22, 1987. While no record exists of any response by Johnson to the motion of his counsel to withdraw or of a October 22nd hearing on the motion, an order authorizing Johnson's counsel to withdraw was entered on October 26, 1987. On that same day, without Johnson or a representative of his interests present, the matter was tried. Judgment against Johnson confirming the easement but awarding no monetary damages to Weston was rendered the following day, October 27, 1987. Significantly, no notice setting the matter for trial appears in the record.
Id. I must disagree with the majority's analysis of Johnson. Here, there was a notice setting the matter for trial while Michael had a lawyer.
¶ 68. The majority cites Fairchild v. General Motors Acceptance Corp., 254 Miss. 261, 179 So.2d 185 (1965), for the proposition that "an attorney who had moved to withdraw his representation could not at the same time exercise authority to act on his client's behalf on other matters." In Fairchild, the appellant hired a lawyer to defend an action brought by General Motors Acceptance Corporation (GMAC). Id. at 263, 179 So.2d at 186. The lawyer filed a demurrer and an answer. Id. Marion Fairchild did not pay the lawyer for his services. Id. The lawyer wrote Fairchild a letter that said the case was set for trial the next day, and if you do not pay, GMAC would take a judgment. Id. at 186-87. When the case was called to trial, the lawyer told the court that his fee had not been paid, and he withdrew as Fairchild's lawyer. Id. at 263, 179 So.2d at 187. The lawyer also "withdrew [the] appellant's answer which had been filed previously." Id. Fairchild was not present so a default judgment was taken. Id.
¶ 69. The court considered the duties owed by the lawyer and even cited the Mississippi Rules of Professional Conduct. Id. Consistent with my conclusion that notice to the client is required before an attorney may terminate the relationship, the court held:
in a proper case, with the consent of the court and after fair warning to his client of his intention to do so, he may withdraw and be relieved of his obligation to defend or prosecute the case further. Both reasonable notice to the client and permission of the court are essential. Miss. Rules of Professional Conduct, No. 44 (1962). . . .
But such withdrawal is prospective. It does not erase those steps in the proceedings already taken.
Amended pleadings may be filed . . . and are not subject to withdrawal by an attorney.
In the case before the court here, [Fairchild]'s answer was on file and its withdrawal was coincident with the attorney's withdrawal from the case. If it were conceded that so long as the attorney continued to represent his client he might withdraw his client's pleadings, such authority would not survive the termination of the relationship. The withdrawal of [Fairchild]'s pleadings without his knowledge or consent, when the case was set for trial and the appellant *591 was present, had the effect of depriving appellant of a substantial right.
The attorney was without the power to withdraw his client's pleadings under the circumstances in the record, and such attempted withdrawal was [wholly] ineffectual to remove the pleadings from the file.
Id. at 265-66, 179 So.2d at 187.
¶ 70. Based on this language, Smith's withdrawal was effective in the future, only when he gave notice to the client. Thus, he had the authority to continue the trial setting from November 12th til December 8th. Unlike the lawyer in Fairchild, Smith did not withdraw any pleadings. In fact, the judge set the date by which new counsel must be employed. Smith's actions before the chancellor on November 12th did not deprive Michael of a substantial right. Instead, his actions after he left the courtroom are what deprived Michael of a substantial right. Such actions were caused entirely by Smith.
¶ 71. The court in Fairchild continued:
49 C.J.S. Judgments, Withdrawal of Appearance § 197 (1947) states:
. . . However, the withdrawal of the attorney's appearance after the filing of a plea does not withdraw the plea so as to justify a judgment by default; and, where an attorney abandons his client's cause without notice, the client should be given a reasonable time to secure other counsel before judgment is taken against him by default.
Since appellant's answer had been duly filed and had not been stricken by an order of the court, and no ground for striking it appearing in the record, judgment by default should not have been entered against appellant.
Upon learning of the action taken, appellant promptly employed another attorney and during the term duly moved to set aside the default judgment. This motion should have been sustained.
Fairchild, 254 Miss. at 266, 179 So.2d at 186-88 (citations omitted).
¶ 72. Here, unlike in Fairchild, neither the chancellor nor Jane's attorney were responsible for the failure to give Michael notice of the December 8th hearing. Thus, in my opinion, the chancellor did not commit reversible error. The chancellor did what was asked of him by Michael's then legal representative and gave Michael additional time to appear for the hearing, hire counsel, and even left open the opportunity for new counsel to ask for yet another continuance. I cannot find that the chancellor deprived Michael of a substantial right that would require this Court to reverse the chancellor's decision not to set aside the judgment.
¶ 73. Fairchild would be applicable if Smith had attempted to withdraw and then the chancellor proceeded with the divorce on November 12th. This did not happen. Here, Smith's only action was to enter the order that continue the trial setting until December 8th, allowed him to withdraw, and gave Michael ten days to get another lawyer. This action was proper to set the case for hearing on December 8th, and Smith had the obligation to inform Michael of the court's action as well as his withdrawal as counsel. Smith, not the chancellor, deprived his client of a substantial right.
¶ 74. The majority is correct that this appeal would not have been necessary if the chancellor had required Smith to comply with Uniform Chancery Court Rule 1.08. This Rule provides that: "When an attorney makes an appearance for any party in an action, the attorney will not be allowed to withdraw as counsel for the party except upon written motion and after reasonable notice to the client and *592 opposing counsel." (Emphasis added). Smith's motion was neither in writing nor did it provide notice to his client. It is important to note that the order clearly states that Jane's attorney "objected" to Smith's motion to withdraw as counsel. Yet Smith was able to persuade the chancellor that there was sufficient grounds to allow him to withdraw without the compliance with Rule 1.08. Although the majority finds comfort in this authority, Michael did not rely upon the violation of Rule 1.08 in his argument in his brief. Michael does not claim that the chancellor erred in allowing Smith to withdraw.
¶ 75. With much respect for the majority and concurring opinions, I simply cannot find that the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Accepting the majority's reasoning, this Court now requires chancellors to provide notice to parties even though the rules do not require such. I respectfully dissent.
ISHEE AND CARLTON, JJ., JOIN THIS OPINION.
NOTES
[1] "How a court treats a motion for reconsideration turns on the time at which the motion is served. If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e). If it is after that time, it falls under Rule 60(b)." Carlisle v. Allen, 40 So.3d 1252, 1260 (¶ 33) (Miss.2010) (quoting Cannon v. Cannon, 571 So.2d 976, 978 n. 2 (Miss.1990)). Michael filed his motion to set aside the divorce judgment within ten days of its entry, which Carlisle characterizes as a Rule 59(e) motion. M.R.C.P. 59. But Michael expressly invoked Rule 60(b)(4) when he requested that the divorce judgment be set aside as void because Michael was not afforded due-process notice of the December 8 hearing. M.R.C.P. 60(b). Therefore, we address the chancery court's action as a denial of a Rule 60(b) motion.

To classify Michael's motion as a Rule 59(e), as opposed to a Rule 60 motion, in these circumstances, would be to make a distinction without a difference. Michael's motion was timely filed under both rules. M.R.C.P. 59, 60(b). The standard of review for a denial of a motion under either rule is abuse of discretion. Perkins v. Perkins, 787 So.2d 1256, 1261 (¶ 9) (Miss.2001) (review of denial of Rule 59(e) motion); Clark v. Clark, 43 So.3d 496, 501 (¶ 21) (Miss.Ct.App.2010) (review of denial of Rule 60(b) motion). And Michael's claim that he did not receive proper notice of the December 8 hearing date invokes relief under both rules. Case law provides a trial court should grant Rule 59(e) relief to a movant who shows the "need to correct a clear error of law or to prevent manifest injustice." Brooks v. Roberts, 882 So.2d 229, 233 (¶ 15) (Miss.2004). And a trial court must grant relief under Rule 60(b) when a judgment is void for the court's actions "inconsistent with due process of law." Clark, 43 So.3d at 501 (¶ 21) (citing Morrison v. Miss. Dep't of Human Servs., 863 So.2d 948, 952 (¶ 13) (Miss.2004)).
[2] Judge Griffis criticizes our citation to Clark for the standard of review of a Rule 60(b)(4) motion. While we agree with the dissent that service of process on Michael was proper under Rule 4, we disagree that due-process concerns cease to exist once a party is properly summoned. See Curtis v. Curtis, 59 So.3d 623, 631 (¶ 28) (Miss.Ct.App.2011) (discussing interaction between Rule 5 and constitutional due-process requirements).
[3] See Hamilton v. Hamilton, 755 So.2d 528, 530 n. 1 (Miss.Ct.App.1999) (explaining history and use of the Farese visitation schedule in Mississippi).
[4] The majority cites the Scope of the Mississippi Rules of Professional Conduct to say that they should only be used for "lawyer's self assessment" and "structure for regulating conduct through disciplinary agencies." The Mississippi Rules of Professional Conduct are not simply limited to disciplinary matters. The rules govern the "ethical conduct" of lawyers. If the rules determine what is "ethical conduct" then certainly the rules can be considered to determine what is or is not the proper conduct of lawyers. I recognize that the Scope also states: "Violation of a[r]ule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The [r]ules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability." The use of the rules here is not for "civil liability" but is for "guidance" to determine when an attorney client relationship ends. Rule 1.16 of the Mississippi Rules of Professional Conduct answers the exact issue before this Courtwhen does an attorney's representation terminate. If this Court does not use the Rules of Professional Conduct to determine when representation ends, then these rules are of little value.