LEE, P.J., for the Court:
PROCEDURAL HISTORY
¶ 1. Scott and Karen Delk were married in 2000. The couple was granted a divorce in 2007 in the Chancery Court of Harrison County on the ground of irreconcilable differences. The chancellor considered the matters of property division, alimony, and attorney’s fees.
¶ 2. The only issue relevant to this appeal is the chancellor’s division of a condominium in Biloxi, Mississippi, owned by Karen prior to the marriage. The condominium was destroyed by Hurricane Katrina; therefore, the division only applies to the equity in the condominium, the insurance proceeds, and grant money issued by the State of Mississippi.
¶ 3. The chancellor found that Scott was entitled to 26.2% of the equity, insurance *739 proceeds, and grant money. Scott asserts that the chancellor applied an erroneous legal standard in reaching this decision. In the alternative, Scott argues that the chancellor failed to consider relevant factors in dividing the property; thus, he argues that the chancellor’s decision was manifestly wrong and clearly erroneous. Finding no error, we affirm.
FACTS
¶ 4. In 1993, approximately five years before she and Scott started dating, Karen purchased a condominium in the Windjammer Condominium complex in Biloxi, Mississippi. Scott and Karen married in 2000. In 2001, Karen transferred half ownership in the condominium to Scott by quitclaim deed. Karen testified that it was not her intent to jointly own the property with Scott, but she conveyed title to Scott in order to refinance the mortgage. The mortgage remained in Karen’s name only. Renters occupied the condominium during this time.
¶ 5. After the couple was married, they lived at Scott’s residence at Five Oaks, which he owned prior to the marriage. They lived in this home for less than a year. When the home at Five Oaks was sold, the profits were deposited into the couple’s joint checking account. The couple built a new home at On The Green, where they lived until moving into the Windjammer condominium in late 2002 or early 2003. The parties shared the equity from the sale of the home at On The Green.
¶ 6. In 2003, Karen refinanced the condominium for a second time. The condominium was appraised at $236,000, and the outstanding balance was $108,171. The couple had made changes to the condominium, such as replacing carpet, laying hardwood floors, installing new cabinetry, purchasing new appliances, and repainting. Karen took the equity in the condominium and deposited it into the joint bank account.
¶ 7. Scott moved out of the condominium in May 2005, when the couple separated. After Scott moved out, Karen provided him a billing statement documenting debts and expenses. Scott paid the maintenance fees, half of the mortgage note, property taxes, telephone bills, and cable bills. He stopped making payments on May 16, 2005, when he discovered that Karen was depositing his checks for appraisal work he had done into her account. He testified that he could not continue to pay the condominium expenses without the paychecks. Karen admitted that she took some of Scott’s checks, but she felt justified in taking the checks because they were for expenses.
¶ 8. The condominium was destroyed in August 2005, when Hurricane Katrina struck the Mississippi Gulf Coast. As a result, the property was eventually sold, and Scott and Karen were paid insurance proceeds and received a grant issued by the Mississippi Development Authority. The parties received $74,000 in insurance money for damages to the condominium.
STANDARD OF REVIEW
¶ 9. “This Court will not disturb the findings of a [chancellor unless the [chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990).
DISCUSSION
I. PROPER LEGAL STANDARD
¶ 10. The chancellor determined that the condominium was commingled and became marital property. Once property has been qualified as marital or separate, the chancellor must then apply the factors *740 outlined in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994) in dividing the property. Scott argues that although the chancellor correctly outlined the Ferguson factors, he failed to correctly apply them. Scott asserts that the chancellor erred by only looking at the direct financial contribution of the parties.
¶ 11. The Ferguson factors are:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.

Id.

¶ 12. The chancellor focused on the first factor, substantial contribution to the accumulation of property, which can be by direct or indirect economic contribution. Scott argues that the chancellor failed to apply the Ferguson factors correctly because he only took into account the direct financial contribution of the parties. The chancellor stated that he based his decision on how the expenses for the condominium were paid because it was his “opinion since the inception of this case that the relationship between the parties was a business relationship. For the most part, they remained separate in their financial affairs but for the select items that they placed before this Court.”
¶ 13. The chancellor used the value at the time the condominium became marital property to calculate its value as a marital asset. The equity in the condominium was valued at $127,000 at the time it became a marital asset, and the interest in the condominium was sold for $338,306.93. The chancellor deducted the starting value of $127,000 from the sales price of $338,306.93 and determined that the value of the condominium as a marital asset was $211,306.93.[1] The chancellor found that *741 the condominium became a marital asset in May 2003, when the couple made it their marital residence. The couple lived in the condominium for two years. After reviewing the financial statements, the chancellor found that Karen contributed $63,250, and Scott contributed $22,457 toward the condominium during this time. Scott also paid $3,090 in assessments and taxes after the parties separated. Instead of adding this to Scott’s portion, the chancellor found that Scott was entitled to be reimbursed for half of this amount. Taking these numbers as a percentage of contribution, Karen contributed 73.8%, and Scott contributed 26.2%.
¶ 14. We cannot find that the chancellor applied an incorrect legal standard in reaching his decision. The chancellor mainly used factor one of the Ferguson factors to determine each party’s share in the condominium. However, the chancellor examined the other factors and either found them to be inapplicable, or the other factors were applied in the division of other assets. As to factor number two, the dissipation of assets, the chancellor expressed concern that Scott had made large cash withdrawals from his bank account. Scott testified that the money went toward the development of a property. Karen did not dispute Scott’s testimony. As to factor three, emotional attachment, Karen testified that she had an attachment to the Windjammer condominium; but since the condominium no longer existed at the time of the hearing, this factor was irrelevant. Under factor four, property brought into the marriage, the chancellor noted that Karen owned the condominium for eight years prior to the marriage. As to factor five, there was no testimony as to the tax consequences of the division of the condominium since it was already sold. As to factors six and seven, the need for alimony and the financial security of the parties, the chancellor found that both parties were capable of financially supporting themselves.
¶ 15. The chancellor noted that it would be inequitable to award Scott any more than 26.2% of the interest in the condominium when Karen had owned and paid all the expenses for the condominium for eight years before it became marital property. We cannot find that the chancellor applied an incorrect legal standard in reaching this conclusion. This issue is ■without merit.
II. FERGUSON FACTORS
¶ 16. Scott argues, in the alternative, that if this Court does not find that the chancellor applied an incorrect legal standard, the chancellor’s application of the Ferguson factors was manifestly wrong or clearly erroneous.
¶ 17. Scott first argues that he is entitled to half of the proceeds of the condominium because it was jointly titled in his and Karen’s names. However, jointly titling the property does not on its own convert separate property to marital property. See Thompson v. Thompson, 815 So.2d 466, 470 (¶ 15) (Miss.Ct.App.2002) (“[Tjitle to property is not relevant in determining whether it is a marital or separate asset.”). It was not until the couple began using the condominium as their marital home in 2003 that it became marital property. King v. King, 760 So.2d 830, 836 (¶ 19) (Miss.Ct.App.2000) (“[Pjroperty brought into the marriage by one partner and used by the family becomes a marital *742 asset, losing its identity as a separate estate.”). Therefore, we find the chancellor was correct in basing the valuation of the condominium at the time the couple began using the condominium as a marital residence.
¶ 18. Next, Scott argues that although he did not make a direct payment on the condominium before moving into it, he shared expenses with Karen and provided her a place to live, which allowed her to earn rental income on the condominium. He argues that if he had not paid a portion of the couple’s expenses, then Karen would not have had the opportunity to use the rental income toward the balance on the condominium. Scott points out that he made financial contributions to the condominium, and he helped with the renovations. Karen testified that after she and Scott moved into the condominium, Scott made half of the monthly payments. Scott also points out that he acted as a contractor in building the couple’s marital residences, and he deposited the proceeds from the sale of these homes into the marital account. The chancellor considered Scott’s contributions and noted that Scott benefitted from the use and sale of these properties, as the proceeds were deposited into the marital account.
¶ 19. Scott next argues that the chancellor erred in requiring him to pay a portion of the penalties and interest for late payments on the condominium. The chancellor noted that Scott contends that the condominium is a marital asset; thus, “he is equally responsible for seeing that the debt on the asset is paid, and in fact, he testified to having a stop payment put on the mortgage draft from his bank account.” Scott argues that the chancellor failed to consider that the reason he had stopped making payments was because Karen was taking his paychecks. However, the chancellor ordered that Karen reimburse Scott for the funds she took for his appraisal work.
¶ 20. We find that the chancellor thoroughly analyzed the Ferguson factors, and his findings were not manifestly wrong or clearly erroneous. Therefore, we affirm the chancellor’s division of the condominium.
¶ 21. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J, MYERS, P.J, IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ, CONCUR. GRIFFIS, J, CONCURS IN RESULT ONLY.

. The chancellor’s order states that the sale value minus the value at the time of the *741 marriage is $221,306.93. We note that this is a clerical error, as $338,306.93 minus $127,000 equals $211,306.93. Our opinion will reflect the correct calculation. As the chancellor's order awards a percentage rather than a dollar amount, we do not find it necessary to remand this case for the correction of this error.