# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01424-COA

**MONTREZ WRIGHT**                                                   **APPELLANT**

**v.**

**RAVEN DANIELLE JENKINS**                                          **APPELLEE**

DATE OF JUDGMENT:                11/14/2024
TRIAL JUDGE:                     HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:       DESOTO COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:          LESLIE B. SHUMAKE JR.
ATTORNEYS FOR APPELLEE:          CHARLES E. WINFIELD
                                 ASHLYN BROWN MATTHEWS
NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
DISPOSITION:                     AFFIRMED - 03/10/2026
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., McDONALD AND McCARTY, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     Montrez Wright appeals the DeSoto County Chancery Court's determination that a home Wright purchased in his name only shortly before his marriage was marital property subject to equitable distribution in the court's judgment of divorce between Wright and his wife, Raven Jenkins. After reviewing the record, arguments of counsel, and relevant precedent, we affirm the chancery court's judgment concerning the property.

## Facts

¶2.     Wright and Jenkins were married on November 18, 2020, just days after their child was born on November 12, 2020. They lived together in a home that Wright had purchased for $178,000 on September 29, 2020. The monthly note was originally $1,200 and then

increased to $1,300. The $165,000 mortgage and the title to the property were in Wright's name alone. Jenkins testified that she paid $1,800 towards the down payment, which she was told was half of the amount required, but she did not know how much Wright paid.

¶3. The parties lived in the home until January 23, 2022, when, according to Jenkins, she had to flee because Wright tried to suffocate her with a pillow. After Jenkins left, Wright changed the locks on the doors and eventually rented the home to some other persons. After their separation, Jenkins moved into an apartment and paid rent there through the date of the trial on the divorce petition that she filed.

¶4. On August 2, 2022, Jenkins filed for divorce, alleging habitual cruel and inhuman treatment and irreconcilable differences as grounds. In her complaint, amended on September 2, 2022, Jenkins requested temporary custody of the parties' minor child, temporary support, temporary use and possession of the marital home, and a restraining order to keep Wright away from her. Although Wright was served with process, he never filed an answer to Jenkins's complaint. However, counsel filed an appearance on Wright's behalf.

¶5. On October 31, 2022, the court entered an agreed temporary order, giving Jenkins custody of the minor child. The court granted Wright specific visitation with the child and ordered him to pay temporary child support. The order did not address the temporary use and possession of the home, but it did enjoin the transfer, assignment, or disposal of any marital property without the other party's consent or court order. The order was signed by both parties' attorneys and Wright, who wrote that he "approved" the order "as to form, not content."

¶6. On January 23, 2023, Jenkins filed a contempt petition because Wright had failed to pay the temporary support ordered. She also requested that Wright be ordered to pay her attorney's fees. Wright responded with a motion to reduce the amount of support he was ordered to pay ($435 per month) because on January 23, 2023, he had signed a stipulation of support with the Mississippi Department of Human Services, agreeing to pay $466 per month in support for two other minor children that he had fathered prior to the marriage to Jenkins. The court heard and denied Wright's motion on April 17, 2023.

¶7. On January 2, 2024, Jenkins filed another petition for contempt against Wright for his continuing failure to pay child support. He was now $3,245 in arrears. On September 19, 2024, the court held a pre-trial conference, which Wright did not attend. The court set the matter for trial on October 30, 2024. Over the course of the proceedings, Wright failed to respond to discovery and filed no Rule 8.05 financial disclosure. *See* UCCR 8.05. He closed bank accounts and failed to appear at hearings despite being provided notices of these matters by his attorney.

¶8. The chancery court conducted a trial on Jenkins's divorce complaint and petition for contempt on October 30, 2024. Wright's attorney appeared and told the court that he had texted, left voicemails, emailed, and sent Wright copies of the pre-trial conference order. He stated that he had informed Wright of the trial date, but Wright failed to respond or appear. The court proceeded to hear testimony from Jenkins and her witness and receive other evidence.

¶9. Jenkins testified that she and Wright had a physical altercation where he tried to

suffocate her with a pillow. After she fled the home, he changed the locks. When she had to return later to retrieve her child's medication, Wright jumped into her car and grabbed at the steering wheel, jeopardizing their safety. Jenkins moved to an apartment, but Wright came there, uninvited, on several occasions. One time, he attempted to push her into the trunk of her car. Wright also engaged in other harassing behavior. He took her keys and wallet and kept them for four days; he called her names in front of others; when exchanging the baby for visitation, Wright has taken her purse and dumped its contents. He has taken her cell phone four times. Wright also drove into the front of Jenkins's car, damaging it, for which he was prosecuted in city court.

¶10. Concerning the home, Jenkins confirmed that it was titled in Wright's name and was purchased on September 29, 2020. She testified that Wright, an over-the-road truck driver,[1] was not living in the home, had denied Jenkins access to it, and, instead, had rented the home to others. Jenkins confirmed that she had not paid any house notes, nor the taxes on the home. However, she paid $1,800 as her half of the down payment, and she testified that Wright agreed to add her name to the property after they were married. The court admitted into evidence a Facebook post from the realtor congratulating Jenkins and Wright on closing on their purchase, which included photos of them both at the home. Jenkins also stated that she had helped purchase items in the home, such as the appliances. She asked the court to award her this marital asset and told the court that she could afford the $1,300 monthly

---

[1] Wright was the sole employee of a trucking company owned by his mother.

payment because she was currently paying $1,280 in rent.[2]  Jenkins stated that Wright was currently $1,704 behind in child support and that she owed $12,457.57 in attorney's fees.

¶11.    Jenkins's sister, Olivia Jenkins, testified as her corroborating witness.  She verified that she had knowledge of the incidents Jenkins recounted, and she confirmed the truth of what her sister had said.

¶12.    At the close of testimony, the chancellor ruled from the bench.  Reviewing the *Albright* factors,[3] the court awarded Jenkins permanent custody of the child.  After dealing with other issues concerning the child (support, visitation, insurance, et cetera), the court awarded the marital home to Jenkins.  The court noted the *Ferguson* factors[4] that are normally used in dividing marital property.  The court stated that under *Ferguson*, it could look at the totality of the circumstances to determine the disposition of the marital home, not just the fact that it was titled in Wright's name.  The court held that although the property was in Wright's name, the house became marital property because the parties used it as their home after the marriage.  In its later written opinion, the court also stated that "the home was purchased in anticipation of marriage[,] which occurred approximately fifty-two (52) days later."  Although Jenkins had not made any payments, Wright had rented the home out and, presumably, those rental payments were covering the mortgage. The court awarded the home to Jenkins and ordered that she assume the mortgage and maintenance costs.  The court

---

[2]  Jenkins had become a realtor.

[3]  *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss.1983).

[4]  *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

further ordered that Wright quitclaim the property to Jenkins within fifteen days. If Wright refused, then the court gave Jenkins the authority to sign his name to a deed transferring ownership. The court also awarded Jenkins $10,036.69 in attorney's fees. The court gave Wright credit for the attorney's fees for his share in the equity of the home (approximately $6,000). A final judgment incorporating the court's ruling was entered on November 14, 2024.[5]

---

[5] The final judgment contained the following provision concerning the marital home:

That the parties Montrez Wright and Raven Danielle Jenkins own a home located at 3187 Latimer Road, Horn Lake, Mississippi 38637 which was the former marital home. Although said real property was purchased prior to the marriage and is titled solely in the name of the Defendant, Montrez Wright, the home was purchased in anticipation of marriage which occurred approximately fifty-two (52) days later. That the Plaintiff, Raven Danielle Jenkins, shall have the sole use, title and possession of the former marital home located at 3187 Latimer Road, Horn Lake, Mississippi 38637 without any interference from the Defendant. That Defendant, Montrez Wright, is directed to execute a Quitclaim Deed within fifteen (15) days from the date of this Ruling, transferring any and all interest he may have in the property to the Plaintiff, Raven Danielle Jenkins. The legal description of this property is as follows: (legal description included). That should the Defendant, Montrez Wright, fail to execute the Quitclaim Deed as set forth above, this Court hereby grants the Plaintiff, Raven Danielle Jenkins, power of attorney to execute said Quitclaim Deed on behalf of the Defendant, Montrez Wright, to transfer the interest in said property from Montrez Wright to Raven Danielle Jenkins.

Upon transfer of the property, the Plaintiff, Raven Danielle Jenkins, shall be responsible for the mortgage, insurance, taxes and maintenance on said home. This Court hereby directs the mortgage company that carries the mortgage on the aforementioned property to fully discuss any and all details of said mortgage with the Plaintiff, Raven Danielle Jenkins. Further, the Plaintiff, Raven Danielle Jenkins, shall be allowed the tax credit each and every year for the interest payments on the former marital home. Regarding the equity in the home, this Court find that the current equity in the home is Twelve Thousand Six Hundred Dollars ($12,600.00). Each party is entitled to one-half (½) of

6

¶13.     On November 21, 2024, Jenkins filed a motion for reconsideration.  She asked the court to determine a different method for the transfer of Wright's ownership interest because Mississippi Code Annotated section 89-1-29 (Rev. 2021) prohibits a spouse from being designated as attorney-in-fact for a power of attorney transferring homestead property.[6]  On December 9, 2024, the chancery court granted the motion and transferred the property itself by a subsequent "Order for Judicial Transfer of Property."  In that order, the court divested Wright of his interest in the property and vested all right, title, and interest in Jenkins.  The court ordered that a certified copy be recorded in the county land records and serve to quiet title.

¶14.     On December 20, 2024, Wright appealed both the final judgment of November 14, 2024, and the subsequent December 9, 2024 orders of the court.  Wright identifies two issues on appeal, namely (1) that the chancery court erred in finding that the home was marital property, and (2) that the chancery court erred in transferring the property to Jenkins.

**Standard of Review**

---

the equity with each party to receive Six Thousand Three Hundred Dollars ($6,300.00).

[6] Mississippi Code Annotated section 89-1-29 provides:

A conveyance . . . upon a homestead exempted from execution shall not be valid or binding unless signed by the spouse of the owner if the owner is married and living with the spouse or by an attorney in fact for the spouse, . . . .  All powers of attorney authorizing any conveyance, mortgage, deed of trust or other incumbrance upon a homestead shall designate an attorney in fact *other than the spouse.*

(Emphasis added).

¶15.    "This Court applies a limited standard of review to a chancellor's division and distribution of marital property." *Warner v. Warner*, 341 So. 3d 152, 159 (¶21) (Miss. Ct. App. 2022). "The equitable distribution of marital assets is committed to the discretion of the chancellor, whose findings will not be disturbed unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard." *Palmer v. Palmer*, 121 So. 3d 260, 262-63 (¶8) (Miss. Ct. App. 2013).

**Discussion**

I.    **Whether the chancery court erred in finding that the home was marital property.**

¶16.    To equitably divide property, the chancery court must first classify assets as either marital or non-marital, then value the property, and then divide the marital property equitably. *Warner*, 341 So. 3d at 159-60 (¶22). All assets earned or accrued during the course of the marriage are presumed to be marital property. *Bullock v. Bullock*, 218 So. 3d 265, 271 (¶18) (Miss. Ct. App. 2017). "The burden of proof is on the spouse claiming property as separate to rebut this presumption." *Rhodes v. Rhodes*, 52 So. 3d 430, 441 (¶42) (Miss. Ct. App. 2011). The "burden goes beyond a mere demonstration that the asset was acquired prior to marriage." *Cassell v. Cassell*, 389 So. 3d 305, 311 (¶12) (Miss. 2024). Moreover, "simply titling the property in one spouse's name does not create a presumption that the property is separate." *Rhodes*, 52 So. 3d at 437 (¶22).

¶17.    The Mississippi Supreme Court has held that "[p]roperty brought into the marriage by one partner and used by the family becomes a marital asset." *Palmer*, 121 So. 3d at 263 (¶8). For example, in *Palmer*, the husband's first wife had been gifted one acre of land on

which they built a home. *Id*. at 261 (¶3). The property was titled in the first wife's name. *Id*. After her death, their children deeded their interest to the husband. *Id*. When the husband remarried, his new wife moved into the home. *Id*. When they divorced, the chancellor determined that the home was marital property subject to equitable division. *Id*. at 262 (¶6). On appeal, the supreme court agreed, noting that "[a]ssets which are classified as non-marital . . . may be converted into marital assets if they are . . . utilized for domestic purposes, absent an agreement to the contrary." *Boutwell v. Boutwell*, 829 So. 2d 1216, 1221 (¶19) (Miss. 2002).

¶18. The case of *Davidson v. Davidson*, 369 So. 3d 607 (Miss. Ct. App. 2023), is an example of property owned by a spouse prior to a marriage that was determined to be marital property under the "family use" doctrine. There, prior to the marriage, the wife had purchased a home that was paid for before her husband moved in. *Id*. at 609 (¶2). The parties were married from January 2017 until they separated in May 2018. *Id*. When the chancery court determined the home to be marital property in their divorce, the wife appealed, arguing that the home was paid for before the husband moved in and that he only lived there for seventeen months. *Id*. at 613-14 (¶18). We disagreed, pointing out that "[p]roperty that was once separate may convert to marital property under the family-use doctrine." *Id*. at 613 (¶17). Further, we stated, "According to the [S]upreme [C]ourt, the family-use doctrine will almost always convert a separately owned 'marital' home to marital property." *Id.* (citing *Faerber v. Faerber*, 13 So. 3d 853, 861 (¶29) (Miss. Ct. App. 2009) (citing *Stewart v. Stewart*, 864 So. 2d 934, 938-39 (¶16) (Miss. 2003))). We noted that both

parties contributed to the bills and maintenance of the home and completed several renovations funded by a loan secured by the husband. *Id*. at 614 (¶21).

¶19. In the case at hand, the record supports the chancery court's finding that the home at issue was marital property. It was undisputed that Jenkins contributed to the home's purchase and that she and the child lived there with Wright as a family until she had to leave two years later for her and the child's safety. During that time, she worked and testified to helping purchase household items, such as appliances, to furnish the home. Jenkins further testified that Wright agreed to put her name on the property after they were married, obviously intending that the home ultimately belong to both of them.

¶20. Wright did not appear at trial and presented the court with no evidence to support his claim that the property was not marital, as was his burden. *See generally* Deborah H. Bell, *Bell on Mississippi Family Law* § 6.03[1][a], at 150 (3d ed. 2020) ("Because of the presumption in favor of marital property, a spouse seeking separate classification bears the burden of proof."). Instead, Wright asserts that the law is in his favor, but he relies on two cases that are inapplicable and distinguishable.

¶21. Wright erroneously cites *Delk v. Delk*, 41 So. 3d 738 (Miss. Ct. App. 2010), as holding that a wife's condominium, purchased eight years before the marriage, was only marital property for the two years that the parties lived there. *Delk* held exactly the opposite. The chancery court found that the condominium became a marital asset when the couple made it their marital residence, period. *Id*. at 740-41 (¶13). There was no limitation on how long it was a marital asset. The chancery court explained, however, that the husband's

equitable share in the condominium was less than the wife's share because the wife paid the bulk of the expenses over the full ten years of ownership. *Id*. at 741 (¶15). We found no error with the chancery court's finding that the condominium was marital property. *Id*. at (¶14).

¶22. Similarly, Wright cites *Anderson v. Anderson*, 310 So. 3d 1176 (Miss. Ct. App. 2020) in error. There, the wife's grandmother owned fifty-nine acres of property that had been in the family a long time. *Id*. at 1178 (¶6). The wife testified that the grandmother wanted her to have the property, but when she and her husband went to their family lawyer to have the deed for the grandmother prepared, the wife had the deed put in both her and her husband's name because she was afraid of what her husband would do if she did not convey it. *Id.* at (¶7). The wife's fear was not unfounded, as testimony showed the husband had attacked the wife, punched holes in walls, killed two dogs, and verbally and physically abused the wife. *Id.* at (¶8). When the wife sued for divorce, the chancery court found that the fact that the fifty-nine acres was jointly titled did not make it a marital asset. *Id.* at 1179-80 (¶9). On appeal, we held that there was substantial credible evidence that the property was intended to be the wife's property and that her fear of her husband prevented her from having it titled in her name. *Id.* at 1182 (¶23). We affirmed the chancery court's ruling that the property was not a marital asset. *Anderson* is clearly distinguishable from the facts in this case, where the actions of the parties (i.e., purchasing a home shortly before the marriage, agreeing to later deed it so that it would be titled in both parties' names, and mutually maintaining a household in the home) support the chancery court's ruling that the home was marital

11

property.

¶23.    Here, Jenkins testified that she and Wright bought the home together, intending it to be their marital home.  She said that he had agreed that after they married, he would put the property in her name as well.  The fact that the home was purchased only fifty-two days before the parties married further indicates that it was intended to become the parties' marital home.  In fact, Wright and Jenkins lived in the home for nearly two years until Wright caused Jenkins to leave.  Just as the court in *Anderson* looked at the intent of the parties to determine if property was marital or separate, the court in this case determined that there was sufficient evidence showing the parties intended the home to be their marital home and, in fact, lived there as a family, converting any alleged separate estate into marital property subject to equitable division.  Given these facts, we find that the chancery court did not abuse its discretion in determining the home to be marital property subject to equitable division despite the fact that it was titled in Wright's name only.

II.    **Whether the chancery court erred in transferring the property to Jenkins.**

¶24.    Although Wright states as his second issue on appeal that the chancery court erroneously transferred the property to Jenkins, Wright presents no separate argument on that issue.  We have already held that the property was marital property subject to equitable distribution.  Wright presents no additional argument with supporting authorities challenging the equitable distribution that the court made.  "Points not argued in the brief on appeal are abandoned and waived." *Summers v. Gros*, 319 So. 3d 479, 485 (¶21) (Miss. 2021).  "Our caselaw clearly provides, the failure to cite supporting legal authority precludes consideration

12

of an issue on appeal." *Brodie v. Brodie*, No. 2023-CA-01397-COA, 2025 WL 1741866, at *9 (¶40) (Miss. Ct. App. June 24, 2025), *cert. denied* (Miss. Feb. 9, 2006); *see also Quilantan v. State*, 418 So. 3d 560, 567 (¶18) (Miss. Ct. App. 2025) (holding that when a party fails to cite authority to support an argument on appeal, the issue is procedurally barred).

¶25.   In *Newell v. State*, 754 So. 2d 1261, 1264 (¶6) (Miss. Ct. App. 1999), we underscored the need for the presentation of both argument on an issue and supporting authorities.  We quoted the Mississippi Supreme Court:

> The purpose of briefs and arguments is to present to the Court in concise form the points and questions in controversy, and by fair argument on the facts and law of the case, to assist the Court in arriving at a just and proper conclusion, and to notify opposing counsel of the questions to be presented and the authorities relied on in reference thereto.  In other words, the purpose is to aid the appellate court in determining what the law is.

*Id*. (quoting *Dozier v. State*, 247 Miss. 850, 851-52, 157 So. 2d 798, 799 (1963)).  Here, Wright makes no separate argument challenging the chancery court's actual equitable division of the marital home, nor does he cite any authorities.  *See* M.R.A.P. 28(a)(7). Accordingly, we find that Wright abandoned, waived, and is otherwise procedurally barred from arguing the issue of the chancellor's manner of equitable distribution of the home on appeal.

**Conclusion**

¶26.   Because we find no error by the chancery court in ruling that the home of the parties was marital property despite being titled in Wright's name only, and because we find that Wright waived his second issue on appeal because he failed to present any argument on it,

13

we affirm the chancery court's judgment of divorce and order concerning classification and transfer of the marital property.

¶27. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**